WILLKINGS L. HARTLEY v. GEORGE R. BALLOU AND WIFE, MILDRED H. BALLOU

No. 91

(Filed 26 November 1974)

**1. Rules of Civil Procedure § 52— trial without jury — duty of judge to find facts and state conclusions**

    Rule 52(a)(1) provides that, in an action tried without a jury, the court must find the facts specially and state separately its con-

Hartley v. Ballou

clusions of law, but the rule does not require or contemplate that the court submit to itself issues of fact in the manner in which issues of fact are submitted to a jury.

2. **Rules of Civil Procedure § 15— variance between allegations and proof — complaint deemed amended**

Where there were variances between the allegations of plaintiff's complaint and the evidence upon which plaintiff sought to recover, the complaint should be deemed amended to conform to the proof. G.S. 1A-1, Rule 15(b).

3. **Sales § 6— sale of house — implied warranty — stage of construction not determinative**

Whether there is an implied warranty in a contract for the sale of a house does not depend on whether the house has been completed or whether it is in some stage of construction at the time the contract for the sale and purchase thereof is made.

4. **Sales § 6— sale of house — implied warranty of workmanlike construction and no major structural defects**

In every contract for the sale of a recently completed dwelling, and in every contract for the sale of a dwelling then under construction, the vendor, if he be in the business of building such dwellings, shall be held impliedly to warrant to the initial vendee that, at the time of the passing of the deed or the taking of possession by the initial vendee (whichever first occurs), the dwelling, together with all its fixtures, is sufficiently free from major structural defects, and is constructed in a workmanlike manner, so as to meet the standard of workmanlike quality then prevailing at the time and place of construction; and this implied warranty in the contract of sale survives the passing of the deed or the taking of possession by the initial vendee.

5. **Sales § 6— sale of house — implied warranty — waterproof basement — no absolute guarantee**

At the time of the execution of the contract of sale, defendant, the builder-vendor, impliedly warranted to plaintiff and his wife that the basement of the newly constructed dwelling had been sufficiently waterproofed, in accordance with the standards of workmanlike quality then prevailing in that area, to prevent water leakage under normal weather conditions; however, such implied warranty falls short of an absolute guarantee that the waterproofing was sufficient to protect the basement area from damage by water in the event of hurricanes or other extreme weather conditions.

6. **Sales §§ 6, 17— implied warranty in sale of house — sufficiency of evidence of breach**

In an action to recover damages for alleged breach of warranty, plaintiff was entitled to recover only for his inconvenience and expense incurred during the period from the initial occupancy of the dwelling by plaintiff around Christmas 1969 to the completion of extensive repairs made by defendant in January and February 1970 where there was ample evidence to support a finding that defendant breached his implied warranty by his failure initially to provide

Hartley v. Ballou

waterproofing sufficient to protect the basement area from water damage under normal weather conditions for that area but extensive repairs were subsequently made by defendant, plaintiff was fully aware of the flooding problem and of defendant's repair efforts, and plaintiff continued to occupy the dwelling as a residence until the waterproofing repairs proved insufficient under hurricane conditions.

Justice LAKE dissents.

ON *certiorari* to review the decision of the Court of Appeals, reported in 20 N.C. App. 493, 201 S.E. 2d 712, which found "No Error" in the judgment entered by *Judge Tillery*, after trial without a jury, at the February 1973 Session of CARTERET Superior Court, argued and docketed as No. 78 at Spring Term 1974.

Plaintiff instituted this action 23 March 1972 against George R. Ballou and wife, Mildred H. Ballou, to recover damages for alleged breach of warranty.

Pursuant to their contract of 24 October 1969, defendants conveyed to plaintiff and his wife by warranty deed of 4 December 1969 the real estate in Morehead Township, Carteret County, described as Lot Six (6) in Block "A" as shown on map of River Heights Subdivision recorded in Map Book 7, page 59, Carteret County Registry. The completed dwelling thereon had been recently constructed by defendant George R. Ballou.

Plaintiff alleged that defendants, "both expressly and by implication," warranted, *inter alia,* "that the whole house was insulated"; "that the walls had been adequately waterproofed"; "that the cement floor in the basement was of sufficient quality material and workmanship as to prevent any leakage that otherwise might occur"; and that "the aforesaid warranties were made knowingly, intentionally, and fraudulently as an inducement to the trade, and in reliance upon which the plaintiff entered into the agreement, and without which reliance no trade would have been made."

With reference to what occurred subsequent to the transfer of title, plaintiff alleged: "Shortly after taking possession of the premises leakage occurred around the base of the basement walls. The waterproofing of the walls, through lack of competent workmanship and insufficiency of materials used, was not properly done. Upon complaint to defendants, defendants attempted to have remedy applied, but subsequently (on or about October 22 or 23, 1971) there was an unusually heavy

rainfall which filled the basement of the house to about 2½ feet. Upon renewal of complaint to defendants, defendants said and contended that the overflow of water in the basement was due to backing up of water from the storm sewer that was too small in size to discharge the water supply under such a rainfall as had been experienced. Again, on or about February 12, 1972, the house basement filled up to approximately 18 inches of water for the same cause. The inadequacy of the storm sewer pipe was well known to defendants, or should have been, inasmuch as the selection of the system had been at the instance and for the use and benefit of defendants, and the sufficiency of which, by implied if not express warranty, had been guaranteed to the plaintiff-purchaser at the time of the purchase of the property."

Plaintiff further alleged that, on account of defendants' breach of the alleged warranties, plaintiff sustained general and special damages as the result of leakage and flooding of water in the basement.

Answering, defendants denied all of plaintiff's above-stated allegations.

Judge Tillery's judgment recites that "it was agreed in open Court between the parties . . . that the trial judge should find the facts and answer the Issues pertaining thereto as though submitted to and answered by a Jury," and that the following were "the proper and appropriate Issues of facts":

"1. Did plaintiff and defendants enter into written contract of purchase and sale of house and lot referred to and described in the Complaint?

"2. If so, did defendants breach the contract?

"3. If so, what amount of general damage is plaintiff entitled to recover?

"4. What amount of special damage is plaintiff entitled to recover?"

Notwithstanding the quoted recital, the record shows defendants excepted to "the framing of issues three and four."

Evidence was offered by plaintiff and by defendant.

At the conclusion of all the evidence, each defendant moved for a directed verdict and dismissal of the action. The motion of

Hartley v. Ballou

defendant Mildred H. Ballou was allowed; that of defendant George R. Ballou (referred to hereafter as defendant or as Ballou) was denied and he noted his exception.

Judge Tillery's judgment which, by consent, was signed out of term and out of the county, was filed 30 April 1973. After preliminary recitals, the judgment continues and concludes as quoted below:

"Upon consideration of the evidence presented the Court finds the following: ·

"FACTS

"1. It was stipulated by plaintiff and defendants and the Court so finds that the defendants were the owners of the tract of land in question on the fourth day of December 1969 and the purchase price was $34,750.00. Title was taken in the name of the plaintiff, Willkings L. Hartley, and his wife, as tenants by entirety. After acquisition of title to the premises the wife died, leaving the surviving spouse, the plaintiff, the owner in fee, subject only to any outstanding liens against the property.

"2. That the defendant, George R. Ballou, constructed the house in question for sale for use as a residence. The house was completed 30 to 60 days prior to sale. The defendant, Mildred H. Ballou, did not actually participate in the business operation of construction of the house.

"3. That the lot on which the house was constructed was in a subdivision of land that was essentially flat and adjoining Newport River and approximately 6 feet above the ordinary highwater mark, and the lot was approximately 2 blocks from the River. That the defendant, George R. Ballou, had constructed approximately 15 houses in the subdivision at that time and the plaintiff's house was the only one with a basement. There was a drainage ditch with tile adjacent to the paved road in front of the house and a drainage ditch along the back of the lot.

"4. That the house had two (2) stories, the lower of which was a basement which was excavated from the general ground level to a depth of approximately four (4) feet, and the basement area was paneled and carpeted· and in general constructed as a part of the overall living area of the house.

"5. That plaintiff inspected the house in late October, 1969, prior to purchase and the basement area was dry, with no sign of any leakage.

"6. That plaintiff's wife first moved into the house around Christmas of 1969. The plaintiff at that time was at sea on a trip between Corpus Christi, Texas, and Bermuda and return in pursuit of his occupation as chief engineer on merchant vessels.

"7. That just before Christmas there was water on the floor of the basement and after plaintiff's wife moved in water was standing ¾ to 1 inch deep covering most of the floor, and all the carpet, which extended throughout the basement, was wet. There had been no water standing in the yard at that time, and prior to repairs on that occasion the water standing in the basement reached a height of 8 to 12 inches. When the wife discovered that condition in their new house, she contacted plaintiff about the matter, and plaintiff incurred $300.00 in travel expense from Corpus Christi, Texas, home and back to his ship at Norfolk, Virginia, in addition to spending $200.00 on radiograms to and from his home to his ship in connection with his wife moving into the house and discovering the flooded basement.

"8. Defendant George R. Ballou attempted to have repairs made to the basement in January and February, 1970, by, first, building up the floor and attempting to waterproof the basement walls from the inside and, later, by digging around the perimeter of the house with the exception of the garage area on the north side, applying waterproofing material and drainage at footing, relandscaping, etc., and incurring expenses of approximately $4,000.00. The garage was built on a concrete slab on top of the ground and extended northwardly from the north wall of the basement and waterproofing could not be applied the entire length of the outside of the north wall of the basement.

"9. Following the repairs of January and February, 1970, the basement remained dry for approximately eighteen (18) months when in August, 1971, water again ran into the basement and spread from the bottom of the north wall southwardly across the floor. Moveable items of furniture were moved upstairs. The carpet was wet throughout, as was the bottom of the paneling on the walls. There was no surface water outside

Hartley v. Ballou

above the drainage ditches. There was a hurricane in the area at that time. Within two weeks the plaintiff moved out of the house. The basement flooded again approximately one month later, also during a hurricane, with no surface water standing in the yard. In October, 1971, there was a heavy rain and the basement flooded to approximately two feet deep, and again in November. On both of these occasions water was standing in the yard outside of the house.

"10. The basement area of the house was not of sound and workmanlike construction and particularly the north wall thereof which continued to leak even after repairs were attempted in January and February of 1970. This defect was not discernible by reasonable inspection, and at the time of purchase the actual fair market value of the property, because of the latent defect in the basement, was $1,000.00 less than the apparent fair market value which was $34,750.00.

"11. As a direct result of the various floodings the motor in the circulating fan in the basement was replaced, the washer was ruined and worthless, the dryer was damaged, and the heating elements in the water heater were replaced, at a cost to plaintiff of $1,000.00; on each flooding occasion it was necessary to clean up and scrub out the basement at a cost to plaintiff of $250.00; plaintiff had to have the basement pumped out on three or four occasions at a cost of $80.00; and it was necessary to run the heating and air-conditioning units for long periods following floodings to dry out the house at a cost of $210.00 to plaintiff.

"The Court makes the following conclusions of law:

"That there was an implied warranty by the defendant to the plaintiff that the house as constructed and purchased was fit and suitable for its intended purpose as a residence and that due to the latent defect in the condition of the basement there was breach of the implied warranty resulting in a breach of contract, and that the plaintiff is entitled to recover general and special damages therefor.

"That the Issues heretofore appearing are answered:

"1. Yes; 2. Yes; 3. $1,000.00; 4. $2,040.00.

"WHEREPON, IT IS

"ORDERED, ADJUDGED AND DECREED: (1) That the plaintiff have and recover nothing of the defendant Mildred H. Ballou

but that he have and recover of the defendant George R. Ballou (2) general damages in the sum of One Thousand Dollars ($1,000.00) and (3) special damages in the sum total of Two Thousand and Forty Dollars ($2,040.00) representing $1,000.00 for repairs to appliances and heating units, $250.00 for cleaning up and painting, $300.00 for air travel and expenses, $80.00 for pumping out water, $200.00 for wireless messages, and $210.00 for extra heating and air-conditioning, with interest from date as to both general and special damages, and (4) the costs of this action, to be taxed by the Clerk."

Defendant George R. Ballou, referred to in the opinion as defendant, excepted and appealed.

*Bennett and McConkey by Thomas S. Bennett and James W. Thompson III for defendant appellant.*

*Hamilton, Hamilton & Phillips by Luther Hamilton, Jr. for plaintiff appellee.*

BOBBITT, Chief Justice.

[1]    G.S. 1A-1, Rule 52(a)(1), provides: "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." The rule does not require or contemplate that the court submit to itself issues of fact in the manner in which issues of fact are submitted to a jury.

Prior to the adoption of the Rules of Civil Procedure, G.S. 1-185 in part provided: "Upon trial of an issue of fact by the court, its decision shall be given in writing, and shall contain a statement of the facts found, and the conclusions of law separately." In *Wynne v. Allen,* 245 N.C. 421, 96 S.E. 2d 422 (1957), upon waiver of jury trial, the court submitted to itself and answered issues of fact framed in a manner appropriate for submission to a jury. Justice Rodman, speaking for the Court, stated: "Issues arise on the pleadings. [Citations omitted.] To interpret and understand the issues submitted to and answered by a jury, it is proper to examine the pleadings, the evidence, and the charge of the court when there is a charge. [Citations omitted.]" *Id.* at 426, 96 S.E. 2d at 427.

When an action is "tried upon the facts without a jury," there is no charge. The mandate of Rule 52(a)(1) requires that

the trial judge "find the facts specially"; and, in lieu of giving instructions to a jury relevant to issues arising upon the pleadings, that he "state separately" his conclusions of law. The present case indicates the inconsistency and confusion that may arise when the trial judge unnecessarily frames and answers issues *in addition to* finding specific facts and stating his conclusions of law with reference thereto. The court's affirmative answers to the first and second issues, if given legal significance, were findings (1) that the parties entered into the *written* contract of 24 October 1969, and (2) that defendants breached that contract. There was no controversy with reference to whether the written contract of 24 October 1969 was entered into by the parties thereto. Too, there was no allegation, evidence or contention that defendants had breached any of the provisions of *that* contract. The answers to these issues afforded no basis for any recovery by plaintiff. They do not relate to the real issue involved herein, that is, whether the plaintiff is entitled to recover for alleged breach of implied warranty. Hence, we disregard the issues and answers thereto and consider the case on the basis of the pleadings, the evidence, the court's specific findings of fact and conclusions of law, and the judgment.

We note that the evidence does not support plaintiff's allegations in the following respects: There is no evidence that defendant *expressly* warranted "that the whole house was insulated" or "that the walls had been adequately waterproofed" or "that the cement floor in the basement was of sufficient quality material and workmanship as to prevent any leakage that otherwise might occur." There was no evidence of any express warranty or that any warranty was "made knowingly, intentionally, and fraudulently as an inducement to the trade, and in reliance upon which the plaintiff entered into the agreement, and without which reliance no trade would have been made." Moreover, there is no evidence pertaining to any lack of insulation of "the whole house." Nor does the evidence attribute the presence of water in the basement to lack "of sufficient quality material and workmanship" in respect of "the cement floor in the basement."

In particularizing his allegations, plaintiff alleged that the leakage around the base of the basement walls, which occurred shortly after he took possession, was caused by lack of competent workmanship and insufficiency of materials used in waterproofing the walls. He referred to an attempt by defend-

---

**Hartley v. Ballou**

---

ants on or about 22 or 23 October 1971 to remedy this condition; and he attributed this condition to the backing of the water into his basement from an inadequate storm sewer pipe, alleging that "[t]he inadequacy of the storm sewer pipe was well known to defendants, or should have been, inasmuch as the selection of the system had been at the instance and for the use and benefit of defendants."

There was no evidence of any condition existing on or about 22 or 23 October 1971 that defendant attempted to remedy. The uncontroverted evidence tends to show, and the court found as facts, that in January and February 1970 extensive repairs were made by defendant Ballou to waterproof the basement at a cost to him of approximately $4,000.00; and that, after Ballou had done this work, the basement remained dry for approximately eighteen months.

[2]  Although we call attention to these variances between the allegations of the complaint and the evidence upon which plaintiff now seeks to recover, it would seem that under Rule 15(b) the complaint should be deemed amended to conform to the proof. *Mangum v. Surles,* 281 N.C. 91, 187 S.E. 2d 697 (1972), and cases cited. However, these variances between allegations and proof tended to obscure the determinative factual issues and the proper basis for determining what damages, if any, plaintiff was entitled to recover. As stated by Justice Branch in *Roberts v. Memorial Park,* 281 N.C. 48, 59, 187 S.E. 2d 721, 727 (1972) : "[T]he better practice dictates that even where pleadings are deemed amended under the theory of 'litigation by consent,' the party receiving the benefit of the rule should move for leave of court to amend, so that the pleadings will actually reflect the theory of recovery."

If plaintiff is entitled to recover, his recovery must be based upon *breach* of implied warranty. Hence, our first question is whether there was an implied warranty; and, if so, the nature and extent thereof.

Absent evidence of an express warranty, or of misrepresentation, or of any effort to divert plaintiff from a full and complete investigation, defendant relies upon *caveat emptor* as a legal defense to plaintiff's right to recover.

[3]  In numerous recent decisions involving the sale of a recently constructed house by a builder-vendor to the initial purchaser thereof, the rule of *caveat emptor* has been substantially

relaxed. See *Annot.*, Liability of Builder-Vendor or other Vendor of New Dwelling for Loss, Injury, or Damage Occasioned by Defective Condition Thereof, 25 A.L.R. 3d 383 (1969), and supplemental decisions. In such a factual situation twenty-six states have adopted some form of implied warranty. As an exception to the rule of *caveat emptor,* some courts, in accordance with English precedents, hold "that where a house is purchased during the course of construction there is an implied warranty by the builder-vendor that it will be completed in a workmanlike manner, although continuing to take the view that there is no implied warranty with respect to the purchase of a completed house." See 25 A.L.R. 3d at 415. In our view, whether there is an implied warranty does not depend upon whether the house has been completed or whether it is in some stage of construction at the time the contract for the sale and purchase thereof is made. An implied warranty cannot be held to extend to defects which are visible or should be visible to a reasonable man upon inspection of the dwelling. *See, e.g., Driver v. Snow,* 245 N.C. 223, 225, 95 S.E. 2d 519, 520-21 (1956) ; *Hudgins v. Perry,* 29 N.C. 102, 104-105 (1846). *Cf.* N. C. Gen. Stat. 25-2-316(3)(b) which provides that "when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him. . . . " The determinative question here is whether the purchaser, prior to the passing of the deed or the taking of possession (whichever first occurs), had notice of the alleged defects without regard to whether such notice was obtained while the house was under construction or after the completion thereof.

On 24 October 1969, when they contracted to purchase the subject property, and thereafter until 4 December 1969 when the transaction was completed, plaintiff and his wife were free to inspect and did inspect the subject property, particularly the recently constructed dwelling thereon. Nothing had occurred or was then observable either by plaintiff or defendant bearing upon whether the waterproofing was sufficient to protect the basement area from seepage or flooding. Nothing in the evidence suggests that plaintiff was aware of any insufficiency in respect of waterproofing or that such insufficiency could be observed or determined by him upon his reasonable inspection of the completed dwelling. We note here that there was no evidence or

contention that any portion of the house other than the basement was defective in any respect.

Absent evidence of an express warranty, or of misrepresentation, or of any effort to divert plaintiff from a full and complete investigation, defendant's obligation to plaintiff was determinable on legal principles stated in *Moss v. Knitting Mills*, 190 N.C. 644, 648, 130 S.E. 635, 637 (1925), as follows: "It is the duty of the builder to perform his work in a proper and workman-like manner [citations omitted]. This means that the work shall be done in an ordinarily skillful manner, as a skilled workman should do it [citations omitted]. There is an implied agreement such skill as is customary [citation omitted] will be used. In order to meet this requirement the law exacts ordinary care and skill only. [Citations omitted.] Manner of best builders not required in absence of specifications [citation omitted]." *Accord, Cantrell v. Woodhill Enterprises, Inc.,* 273 N.C. 490, 497, 160 S.E. 2d 476, 481 (1968).

[4] In accordance with the legal principles stated in *Moss v. Knitting Mills, supra,* we hold that in every contract for the sale of a recently completed dwelling, and in every contract for the sale of a dwelling then under construction, the vendor, if he be in the business of building such dwellings, shall be held to impliedly warrant to the initial vendee that, at the time of the passing of the deed or the taking of possession by the initial vendee (whichever first occurs), the dwelling, together with all its fixtures, is sufficiently free from major structural defects, and is constructed in a workmanlike manner, so as to meet the standard of workmanlike quality then prevailing at the time and place of construction; and that this implied warranty in the contract of sale survives the passing of the deed or the taking of possession by the initial vendee.

[5] Applying these legal principles, we hold that, at the time of the execution of the contract of sale (24 October 1969), defendant, the builder-vendor, impliedly warranted to plaintiff and his wife that the basement of the newly constructed dwelling had been sufficiently waterproofed, in accordance with the standards of workmanlike quality then prevailing in that area, to prevent water leakage under normal weather conditions. However, such implied warranty falls short of an absolute guarantee that the waterproofing was sufficient to protect the basement area from damage by water in the event of hurricanes or other extreme weather conditions.

[6]   The evidence discloses that, at approximately the time plaintiff's wife moved into the dwelling (Christmas 1969), water was discovered covering most of the basement floor and all of the basement carpeting to a depth of three-fourths to one inch; and that, when this initial leakage occurred, the area was experiencing weather known as a "northeaster" or a "mullet blow," which were normal conditions for the area. This discovery gave notice to plaintiff and to defendant that the basement area of the dwelling was subject to recurring water damage under normal weather conditions. There was ample evidence to support a finding that defendant breached his implied warranty by his failure initially to provide waterproofing sufficient to protect the basement area from water damage under normal weather conditions for that area. For present purposes, we assume plaintiff at that time could have maintained an action for damages for such breach, either (1) for the difference between the reasonable market value of the subject property as impliedly warranted and its reasonable market value in its actual condition, or (2) for the amount required to bring the subject property into compliance with the implied warranty. *See,* 13 Am. Jur. 2d, Building and Construction Contracts § 79 (1964) ; D. Dobbs, Remedies, Building Contracts, § 12.21 (1973). *Accord, Legette v. Pittman,* 268 N.C. 292, 150 S.E. 2d 420 (1966) ; *Robbins v. Trading Post, Inc.,* 251 N.C. 663, 111 S.E. 2d 884 (1960) ; *Lumber Co. v. Construction Co.,* 249 N.C. 680, 107 S.E. 2d 538 (1959). See also, *Salem Towne Apartments, Inc. v. McDaniel & Sons Roofing Co.,* 330 F. Supp. 906 (E.D.N.C. 1970).

Whatever the legal rights and obligations of the respective parties, extensive efforts were made by defendant at a cost of approximately $4,000.00 to protect the basement area of the dwelling from seepage or flooding. This work was done during January and February 1970, at which time the dwelling, except the basement portion thereof, was occupied by plaintiff as a residence. There was evidence tending to show that plaintiff at that time was fully aware of the problem and was fully advised of the extensive efforts undertaken by defendant at his own expense to provide suitable waterproofing for the basement area; and that, with knowledge of these facts, plaintiff continued in possession until the waterproofing proved insufficient under hurricane conditions.

The court found as facts: "Following the repairs of January and February, 1970, the basement remained dry for approxi-

mately eighteen (18) months when in August, 1971, water again ran into the basement and spread from the bottom of the north wall southwardly across the floor. . . . There was no surface water outside above the drainage ditches. There was a hurricane [Doria] in the area at that time. . . . The basement flooded again approximately one month later, also during a hurricane [Ginger], with no surface water standing in the yard. In October, 1971, there was a heavy rain and the basement flooded to approximately two feet deep, and again in November. On both of these occasions water was standing in the yard outside of the house."

In his testimony, Ballou attributed what proved to be the insufficiency of these waterproofing efforts (1) to hurricane conditions and (2) to failure of the drainage ditches in the development to contain the increased flow of water, caused by additional buildings in the development and the construction of a mobile home park adjacent thereto. The quoted findings of fact indicate that the waterproofing efforts of defendant in January and February 1970 proved sufficient except during hurricanes and on occasions when water was standing in the yard outside of the house.

Plaintiff's testimony tends to show that he sold the subject property to C. H. Bennett, the developer of the River Heights Subdivision, on 23 February 1972 for $27,629.19. As an incident to the sale by plaintiff to Bennett, a supplemental written agreement was entered into, in which "each party hereto promises and agrees not to bring any legal action against the other by reason of drainage or flooding on the premises." The inference is permissible that in February of 1972 plaintiff considered that his property had been damaged on account of insufficient drainage and that he considered Bennett was responsible for this condition. With reference to this supplemental written agreement, plaintiff testified: "It was signed in order for him to buy the house by his request. Its purpose was so I wouldn't sue him for any drainage flooding that had occurred. That is what I read in it." Plaintiff's transaction with Bennett had been completed prior to 23 March 1972, the date plaintiff instituted this action against the Ballous.

We note that the complaint ignores entirely the extensive efforts made by Ballou in January and February 1970 and the fact that the basement was one hundred percent dry for eighteen months after Ballou had completed this work. We further note

Hartley v. Ballou

the findings of fact and legal conclusion do not disclose that the court took into consideration when awarding damages the occupancy of the dwelling by plaintiff from December 1969 until September 1971, which includes the period of eighteen months when the basement area of the dwelling was completely dry.

The judgment of the court below is based upon the legal premise that there was an implied warranty in the nature of an absolute guarantee that all portions of the dwelling were fit and suitable for uninterrupted use for residential purposes and that *the presence* of water in the basement in December of 1969, and later in August of 1971, and thereafter, constituted a breach of warranty for which plaintiff was entitled to recover damages. In this connection, we note the damages awarded include $1,000.00, referred to as the difference between the apparent fair market value of the subject property and its actual fair market value with the defect. As of what date this difference was determined is not disclosed. The remaining $2,040.00 of the amount awarded plaintiff includes $1,540.00 for damage to fixtures and expenses incurred in consequence of the flooding during the hurricanes Doria and Ginger in 1971.

Although we approve relaxation of the rule of *caveat emptor* in respect of defects of which the purchaser is unaware and cannot discover by a reasonable inspection, and the substitution therefor of implied warranty as defined herein, the situation was quite different in January and February of 1970. Plaintiff was then fully aware of the problem created by water in the basement and of the extensive efforts then made to provide suitable and sufficient waterproofing. Assuming, *arguendo,* plaintiff could have then rejected defendant's efforts as insufficient, and could have maintained an action for rescission or for damages measured by the difference between the fair market value as waranted and its actual fair market value as of that date, plaintiff failed to do so. On the contrary, with knowledge of the problem and of defendant's efforts to remedy the problem, plaintiff accepted the subject property and continued to reside therein.

Upon the present record, plaintiff was entitled to recover only for his inconvenience and expense, if any, as a result of defendant's breach of implied warranty as defined herein, that is, inconvenience and expense incurred during the period from the initial occupancy by plaintiff to the completion of defendant's efforts in January and February of 1970. He was not

entitled to recover for damages which occurred subsequent to the extensive repairs made by defendant in January and February of 1970.

We note there is no allegation, evidence or contention that defendant, in January or February 1970, made any express warranty with reference to the effectiveness of the extensive waterproofing efforts then made.

We hold that it appears upon the face of the judgment that the court below acted under a misapprehension of the applicable law. On account of the confusion caused by the variances between plaintiff's allegations and his proof, and the difficulties confronting the Court resulting therefrom, we deem it appropriate, in the exercise of our general supervisory jurisdiction, to set aside the court's findings of fact and conclusion of law and vacate the judgment, to the end that there may be a trial *de novo* consistent with legal principles stated herein.

Accordingly, the judgment of the Court of Appeals is reversed, and the cause is remanded to the Court of Appeals for the entry of a judgment setting aside the findings of fact and conclusion of law and vacating the judgment of the trial court, and remanding the cause to the trial court for trial *de novo*.

Reversed and remanded.

Justice LAKE dissents.