GERRY ANN KENNEY v. MEDLIN CONSTRUCTION & REALTY CO., A NORTH
CAROLINA CORPORATION

No. 8319SC743

(Filed 15 May 1984)

### 1. Evidence § 45— value of house—opinion testimony by owner

In an action for breach of an implied warranty of workmanlike quality in
the construction of plaintiff's house, plaintiff was properly allowed to give her
opinion as to the reasonable fair market value of the house on the date of pur-
chase.

### 2. Evidence § 48— quality of workmanship—damage from construction—qualifica-tion of expert witness

A witness who was qualified as an expert in the building of residential
structures was properly permitted to give an opinion as to the quality of
workmanship in and the damage resulting from the construction of plaintiff's
house although he admitted that he did not know what caused the damage,
since he did not testify as to causal factors and his lack of knowledge regard-
ing the cause of damage was thus irrelevant.

### 3. Evidence § 48— qualification of witness to testify as expert

Although a witness was not a licensed contractor, the trial court properly
permitted the witness to testify as an expert in the field of residential con-
struction where the evidence showed that the witness had been involved in
building more than 200 residences, including eight to twelve in plaintiff's sub-
division.

### 4. Sales § 6.4; Vendor and Purchaser § 6.1— construction of house—breach of im-plied warranty of workmanlike quality

Plaintiff's evidence was sufficient for the jury in an action to recover for
breach of an implied warranty of workmanlike quality in the construction of
plaintiff's house where plaintiff and two expert witnesses testified to various
structural defects rendering the quality of construction of plaintiff's house
below the standard prevailing in the area.

### 5. Sales § 19; Vendor and Purchaser § 8— breach of implied warranty of workmanlike quality—costs of repair as measure of damages

In an action for breach of an implied warranty of workmanlike quality in
the construction of plaintiff's house, the trial court did not err in permitting
the jury to award plaintiff the costs of repair rather than the diminution in
value where the jury awarded plaintiff damages of $35,000, plaintiff and her
two expert witnesses testified to numerous structural defects in the construc-
tion of the house, and both expert witnesses testified that repairing the struc-
tural problems would involve stripping the house to its foundation at a cost
ranging between $28,000 and $60,000, since the costs of repair method may
best insure the injured party of receiving the benefit of his or her bargain,
even if repair would involve destroying work already completed, when defects

or omissions in construction are so major that the building does not substantially conform to the contract.

APPEAL by defendant from *Freeman, Judge.* Judgment entered 31 March 1983 in Superior Court, CABARRUS County. Heard in the Court of Appeals 30 April 1984.

Defendant appeals from a verdict awarding plaintiff $35,000 for defendant's breach of an implied warranty of workmanlike quality in the construction of plaintiff's house.

Plaintiff's evidence tended to show: In December, 1978, the parties executed a contract in which defendant agreed to build a house for plaintiff at a cost of $50,625. Construction of the house was completed sometime before 7 February 1979, when the closing occurred. Shortly after plaintiff moved in on 9 February 1979, she began noticing structural problems with the house, including cracks in various walls, doors and in the front porch, buckling of various walls, gaps between the brick and the windows and doors, holes in the walls of the crawl space under the house and loose wires under the house. Plaintiff also became aware that the floor was sinking and that the siding, chimney and doors were pulling apart from the main structure of the house.

Two expert witnesses testified for plaintiff concerning problems with the house. Howard Taylor, Jr., qualified as an expert in building residential structures, testified that he inspected plaintiff's house in October, 1980, and found many structural problems, the most major one being the settling of the house. He testified that the construction of plaintiff's house did not meet the standards of workmanlike quality prevailing in Cabarrus County in December, 1978 and January, 1979. In order to remedy the structural and settling problems, Taylor stated that he would probably need to tear down the house to the footing at a cost of at least $35,000. James Jones, Jr., also qualified as an expert in the field of residential construction, testified that he inspected plaintiff's house in June, 1980 and found extensive structural problems. In his opinion, an increased amount of settlement in one particular area of the house was causing the interior and exterior damage. According to Jones, the construction of plaintiff's home did not meet the standards of workmanlike quality prevailing in the area in December, 1978 and January, 1979. At the time of his inspec-

tion, Jones had estimated that repair of the visible damage would cost at least $28,000. At the time of trial, however, he testified that determining the extent of the damage would require stripping the house down to its frame and foundation at a cost of between $50,000 and $60,000.

Defendant's evidence tended to show: Charles Ervin, the Cabarrus County Inspection Department Supervisor, testified that the construction of plaintiff's house was of sufficient quality to pass inspections in December, 1978 and in January, 1979. He testified that the standard of workmanship exceeded the minimum building code requirements for Cabarrus County.

Defendant testified that plaintiff did not complain until after the closing and that he returned to the house several times to satisfy her various complaints. He offered on one occasion to purchase the house from plaintiff, but plaintiff refused telling him that except for a few minor problems, she was satisfied with the house. He testified that he had constructed other houses in the area in a manner similar to the way he constructed plaintiff's. Before beginning construction, he testified that he checked for soft places in the ground but did not find any.

The jury found that defendant had breached an implied warranty of workmanlike quality and that plaintiff suffered damages, measured by the amount required to bring the property into compliance with the implied warranty, in the amount of $35,000.

*Grant & Hastings, by Randell F. Hastings, for plaintiff appellee.*

*Williams, Boger, Grady, Davis & Tuttle, by John R. Boger, Jr., for defendant appellant.*

VAUGHN, Chief Judge.

[1] At trial, plaintiff was allowed to give her opinion as to the reasonable fair market value of the house on the date of purchase. Defendant first contends that the trial court erred in admitting this testimony since it affirmatively appeared that plaintiff did not know the fair market value. We find no error.

Generally, the owner is considered competent to testify to the fair market value of his property, even if his knowledge

would not qualify him as a witness were he not the owner. The only recognized exception to the general rule is when it affirmatively appears that the owner does not know the fair market value. *Highway Comm. v. Helderman*, 285 N.C. 645, 207 S.E. 2d 720 (1974). In this case, there was no evidence showing a lack of such knowledge. On the contrary, the record shows that plaintiff, who had traveled to Charlotte on a house-hunting trip and had looked at houses in the Tay-More subdivision where she purchased her lot, had the requisite knowledge qualifying her testimony.

[2] Defendant's next two contentions concern the testimony of plaintiff's two expert witnesses, Howard Taylor, Jr. and James Jones, Jr., as to the quality of workmanship in and the damage resulting from the construction of plaintiff's house. Defendant first contends that Taylor's testimony was inadmissible since Taylor himself admitted that he did not know what caused the damage. We find no merit in this contention.

Ordinarily, opinion testimony of an expert witness is admissible if there is evidence that the witness is better qualified than the jury to form such opinion. *Maloney v. Hospital Systems*, 45 N.C. App. 172, 262 S.E. 2d 680, *review denied*, 300 N.C. 375, 267 S.E. 2d 676 (1980); *Stone v. Homes, Inc.*, 37 N.C. App. 97, 245 S.E. 2d 801, *review denied*, 295 N.C. 653, 248 S.E. 2d 257 (1978). Mr. Taylor, who built most of the houses in plaintiff's subdivision and who was qualified at trial as an expert in the building of residential structures, was qualified to render an opinion as to the quality of workmanship and the amount of damage. His lack of knowledge regarding the cause of the damage was irrelevant since he did not testify as to causal factors.

[3] Defendant next contends that the trial court erred in allowing James Jones, Jr. to testify as an expert witness in the field of residential construction. We find no error.

The trial court has discretion to determine whether a witness has qualified as an expert. *Maloney, supra.* We find no abuse of discretion in the trial court determination that Jones, who had been involved in building more than 200 residences, including eight to twelve in plaintiff's subdivision, was an expert, better qualified than the jury to form an opinion as to the quality of workmanship and damage resulting from the construction of

plaintiff's house. That Jones was not a licensed contractor does not render his opinion testimony inadmissible. *See id.*

[4] At the close of plaintiff's evidence, defendant moved for a directed verdict on the grounds that plaintiff failed to establish defendant's breach of an implied warranty of workmanlike quality. Defendant now contends that the trial court's denial of his motion constituted prejudicial error. We disagree.

It is the duty of every contractor or builder to perform in a proper and workmanlike manner. The law recognizes an implied warranty that the contractor or builder will use the customary standard of skill and care. *Hartley v. Ballou,* 286 N.C. 51, 209 S.E. 2d 776 (1974). Upon review of the record in this case, we find plenary evidence supporting plaintiff's claim of breach of an implied warranty. Plaintiff and two expert witnesses testified to the various structural defects rendering the quality of construction of plaintiff's house below the standard prevailing in the area. The question on a directed verdict is whether the evidence, considered in the light most favorable to plaintiff, is sufficient for submission to a jury. *Hunt v. Montgomery Ward and Co.,* 49 N.C. App. 642, 272 S.E. 2d 357 (1980). We answer this question in the affirmative; the trial judge properly submitted plaintiff's case to the jury.

[5] Defendant's next contention concerns the standard used to measure damages caused by defendant's breach. Defendant cites error in the trial court instruction to the jury to measure plaintiff's damages by "the amount required to bring the subject property into compliance with the implied warranty." We find no error.

The purpose of awarding money damages is to ensure the injured party of receiving what he or she contracted for or its equivalent. *Leggette v. Pittman,* 268 N.C. 292, 150 S.E. 2d 420 (1966); *Robbins v. Trading Post, Inc.,* 251 N.C. 663, 111 S.E. 2d 884 (1960). Our courts recognize two methods of measuring damages in construction contract cases, both of which are intended to put the injured party in as good a position as if the contract had been fully performed. The first method, the one used by the trial court in this case, awards the injured party the cost of repair necessary to make the building conform to the contract specifications. The second method awards the injured party the difference in value between the building contracted for and the building actually

received. *See Leggette, supra; Robbins, supra; LaGasse v. Gardner,* 60 N.C. App. 165, 298 S.E. 2d 393 (1982).

Our courts have adhered to the general rule that the cost of repair is the proper measure of damages unless repair would require that a substantial portion of the work completed be destroyed. In such case, the diminution in value method may be the better measure of a party's damages. *See Leggette, supra. Robbins, supra; Board of Education v. Construction Corp.,* 64 N.C. App. 158, 306 S.E. 2d 557 (1983), *review denied,* 310 N.C. 152, 311 S.E. 2d 290 (1984); *LaGasse, supra; Coley v. Eudy,* 51 N.C. App. 310, 276 S.E. 2d 462 (1981).

The policy underlying this general rule recognizes the need to avoid economic waste and undue hardship to the defendant contractor when, although the building substantially conforms to the contract specifications, a minor defect exists that does not substantially lower its value. *See D. Dobbs,* Remedies, § 12.21 (1973); 5 A. Corbin, Contracts § 1089 (1964); *see also Blecick v. School District No. 18 of Cochise County,* 2 Ariz. App. 115, 406 P. 2d 750 (1965) (absent proof that economic waste would result from remedying defects, a builder is liable for the cost of making a structure conform to the contract). If, for example, a minor defect could be repaired only at a high cost disproportionate to the minor loss value, then the diminution in value method is the better measure of damages. *See* Restatement (Second) of Contracts § 348 (1979); *D. Dobbs, supra;* 5 *A. Corbin, supra.* A damage award based on the diminution in value in a case involving substantial performance by the defendant also assures that the plaintiff will not be unjustly enriched by receiving an award far exceeding the probable loss in value. A good illustration of a situation warranting the diminution in value method of measuring damages is found in *Jacob & Youngs v. Kent,* 230 N.Y. 239, 129 N.E. 889, *re-argument denied,* 230 N.Y. 656, 130 N.E. 933 (Ct. App. 1921), where a plumber, instructed to use a certain type of plumbing supplies in the construction of a house, used a different type of equal quality. Remedying the defect would have required tearing down the house. Judge Cardozo held, in such case, that the diminution in value method was the better measure of damages.

While the diminution in value method can avoid economic waste, when the cost of repair does not involve an imprudent ex-

pense, the cost of repair method may best ensure the injured party of receiving the benefit of his or her bargain, even if repair would involve destroying work already completed. When defects or omissions in construction are so major that the building does not substantially conform to the contract, then the decreased value of the building constructed justifies the high cost of repair. *See D. Dobbs, supra;* 5 *A. Corbin, supra;* Restatement (Second) of Contracts, *supra.*

The Restatement (Second) of Contracts, offers the following illustration of a situation warranting the cost method of measuring damages:

> A contracts to build a house for B for $100,000. When it is completed, the foundations crack, leaving part of the building in a dangerous condition. To make it safe would require tearing down some of the walls and strengthening the foundation at a cost of $30,000 and would increase the market value of the house by $20,000. B's damages include the $30,000 cost to remedy the defects.

*Id.* at § 348, comment c, illustration 3.

The example in the Restatement is markedly similar to the situation in this case: Plaintiff and her two expert witnesses testified to numerous structural defects in the construction of the house, including cracks in the walls, door and in the front porch; gaps between the brick and the windows and doors; ill-fitting moldings; and sinking of the floor due to the settling of the house. After hearing estimates from both expert witnesses that repairing the structural problems would involve stripping the house to its foundation at a cost ranging anywhere between $28,000 and $60,000, the jury awarded plaintiff damages of $35,000.

We do not find the cost of repair awarded plaintiff to be disproportionately high as compared to the loss in value without such repair. Plaintiff testified that she entered into a contract for a house worth around $51,000 and received a house, that in her opinion, was worth only around $20,000. The record shows that defendant did not substantially perform his part of the bargain. Awarding plaintiff the cost of repair in this case does not involve economic waste and best ensures that plaintiff will be in as good

a position as she would have been had the contract been fully performed.

Defendant lastly contends that the trial court erred in denying his motion for judgment notwithstanding the verdict. Because there was plenary evidence supporting the jury verdict, we find no error.

No error.

Judges BRASWELL and EAGLES concur.