IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-692

Filed: 20 December 2016

Wake County, No. 14 CVS 15232

BRADLEY WOODCRAFT, INC., Plaintiff,

v.

CHRISTINE BODDEN a/k/a Christine Dryfus, Defendant.

Appeal by defendant from judgment entered 4 February 2016 by Judge G. Bryan Collins, Jr. in Wake County Superior Court. Heard in the Court of Appeals 28 November 2016.

*John M. Kirby for defendant-appellant.*

*Morningstar Law Group, by Shannon R. Joseph, for plaintiff-appellee.*

ENOCHS, Judge.

Christine Bodden a/k/a Christine Dryfus ("Defendant") appeals from the trial court's judgment against her, and the trial court's order awarding costs to Bradley Woodcraft, Inc. ("Plaintiff"). On appeal, she contends that the trial court erred in (1) entering a directed verdict against her as to her fraud claim; (2) entering a directed verdict against her as to her unfair and deceptive trade practices claim; (3) entering judgment where the verdicts were inconsistent; (4) admitting the testimony of a purported expert witness; (5) awarding costs to Plaintiff; and (6) denying her motion

for costs. After careful review, we reverse the trial court's judgment and order and remand for a new trial on all issues.

Factual Background

In 2013, Defendant and her husband, Chris Dryfus ("Chris"), bought a house in Raleigh, North Carolina. The house was approximately 20 years old and Defendant and Chris decided to renovate certain parts of it.

Toward this end, in July 2013, Defendant contacted Plaintiff, a contracting company which is owned and operated by Joey Bradley ("Bradley"), and employed it to build custom archways and to do select trim work around the house. Bradley represented to Defendant that he was qualified to carry out these projects. Shortly after beginning his work at Defendant's and Chirs' home, Bradley submitted a proposal to Defendant for additional renovations in her kitchen that he claimed he could perform as well — including installing new cabinetry and an island cabinet. Defendant agreed to this proposal.

As work on the home renovations progressed, Defendant became dissatisfied with Plaintiff's work, believing that it did not conform to the specifications they had agreed to. As a result, Defendant communicated to Bradley on multiple occasions that the renovations were not being done correctly and were unacceptable. Specifically, Defendant informed Bradley, among other deficiencies in Plaintiff's work, that the island was not plumb, the ends of the cabinets were unfinished, the

hutches for the archways were not flush with the wall, the quality of the cabinets was poor, the refrigerator was not plumb, and the dishwasher opening was too large.

In late June 2014, Defendant and Bradley met to discuss the progress of the various renovation projects. During this meeting, Defendant made the final two agreed to payments for Plaintiff's work with her American Express card in the amounts of $19,000.00 and $7,000.00 respectively. Defendant believed that at the time she made these payments it was understood that Plaintiff would complete its work on her home to the agreed upon specifications and correct any errors in the work that had already been done. Bradley, conversely, had a different recollection of this meeting believing that he and Defendant had resolved that all of the renovations were complete and satisfactory and that no further work was necessary.

Thereafter, Bradley did not perform any further work on Defendant's house and did not return her phone calls or respond to other attempts by her to contact him. Defendant, believing that Plaintiff had breached their agreement by failing to finish the agreed to renovation projects, contacted American Express and disputed the $26,000.00 in payments she had made to Plaintiff. American Express ultimately reversed the charges based upon Defendant's representations.

On 14 November 2014, Plaintiff filed a complaint in Wake County Superior Court alleging causes of action for breach of implied and express contract against Defendant seeking to recover the $26,000.00 amount that Defendant had American

Express reverse, plus interest, as well as court costs. On 20 January 2015, Defendant filed an answer, motion to dismiss Plaintiff's breach of implied contract claim, and counterclaims for (1) breach of contract; (2) fraudulent misrepresentation; (3) negligent misrepresentation; (4) wrongful interference with contractual rights; (5) wrongful interference with prospective contract; and (6) unfair and deceptive trade practices.

On 13 August 2015, Plaintiff filed a motion for summary judgment on all of Defendant's counterclaims except for her claim for breach of contract. A hearing on Plaintiff's motion for summary judgment and Defendant's motion to dismiss was held on 7 December 2015 before the Honorable G. Bryan Collins, Jr. in Wake County Superior Court. That same day, Judge Collins entered an order denying Defendant's motion to dismiss.

On 11 December 2015, Judge Collins entered an order granting Plaintiff's motion for summary judgment as to Defendant's wrongful interference with contract rights counterclaim and wrongful interference with prospective contract counterclaim. Judge Collins denied Plaintiff's motion, however, as to Defendant's fraudulent misrepresentation, negligent misrepresentation, and unfair and deceptive trade practices counterclaims.

A trial was subsequently held before Judge Collins in Wake County Superior Court from 4 January 2016 through 8 January 2016. At trial, Plaintiff moved for a

directed verdict on Defendant's fraud, negligent misrepresentation, and unfair and deceptive trade practices claims on the theory that because a valid contract was in effect between the parties, the economic loss rule limited Defendant's possible remedies to those arising under the law of contract. After hearing the arguments of the parties, the trial court ultimately granted Plaintiff's motion and directed verdict in its favor on these claims.

Defendant presented evidence at trial tending to establish that Bradley fraudulently represented to her that he was a licensed general contractor when he was not in order to induce Defendant to hire him to perform the renovations to her home. She also stated that Bradley billed her for items which were never delivered and promised that he would complete the work when he had no intention of doing so.

At the conclusion of trial, the jury found Defendant had breached her contract with Plaintiff and determined that she was liable to Plaintiff for $26,000.00. The jury also found Plaintiff had breached the contract as well, however, and awarded Defendant $19,400.00.

On 19 January 2016, Defendant filed a motion for reconsideration and for a new trial pursuant to Rules 54(b), 59, and 60 of the North Carolina Rules of Civil Procedure. Defendant additionally filed a motion for judgment notwithstanding the verdict pursuant to Rule 50. That same day, Plaintiff filed a motion for costs and attorneys' fees. Defendant, in turn, filed her own motion for costs on 1 February 2016.

The trial court entered judgment on 4 February 2016 offsetting the two verdicts resulting in a net judgment against Defendant in the amount of $6,600.00. The trial court also entered an order on 22 February 2016 (1) granting Plaintiff's motion for costs and awarding costs to Plaintiff in the amount of $4,599.87; (2) denying Plaintiff's motion for attorneys' fees; (3) denying Defendant's motion for reconsideration and for a new trial; (4) denying Defendant's motion for judgment notwithstanding the verdict; and (5) denying Defendant's motion for costs. Defendant filed notice of appeal of the trial court's judgment and 22 February 2016 order on 7 March 2016. Plaintiff also filed notice of appeal of the trial court's judgment and 22 February 2016 order, but subsequently withdrew its appeal on 17 June 2016.

Analysis

I. <u>Economic Loss Doctrine</u>

Defendant first argues on appeal that the trial court erred in entering a directed verdict against her as to her claim for fraud. Specifically, she contends that the trial court incorrectly applied the economic loss doctrine in directing its verdict on this issue. We agree.

> When considering a motion for a directed verdict, a trial court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of every reasonable inference arising from the evidence. Any conflicts and inconsistencies in the evidence must be resolved in favor of the non-moving party. If there is more than a scintilla of evidence supporting each

> element of the non-moving party's claim, the motion for a
> directed verdict should be denied.

*Maxwell v. Michael P. Doyle, Inc.*, 164 N.C. App. 319, 322, 595 S.E.2d 759, 761 (2004) (internal citations omitted). "[T]his Court must determine whether plaintiff's evidence, when considered in the light most favorable to plaintiff, was legally sufficient to withstand defendants' motion for a directed verdict as to plaintiff's claims. The motion for directed verdict should be denied if there is more than a scintilla of evidence supporting each element of plaintiff's claim." *Merrick v. Peterson*, 143 N.C. App. 656, 661, 548 S.E.2d 171, 175 (2001). Also, "[b]ecause the trial court's ruling on a motion for a directed verdict addressing the sufficiency of the evidence presents a question of law, it is reviewed *de novo*." *Maxwell*, 164 N.C. App. at 323, 595 S.E.2d at 761.

Furthermore, it is well settled that "[r]eversal is warranted where a trial court acts under a misapprehension of the law. Our Supreme Court has held that 'where it appears that the judge below has ruled upon [a] matter before him upon a misapprehension of the law, the cause will be remanded to the Superior Court for further hearing in the true legal light.'" *In re M.K. (I)*, __ N.C. App. __, __, 773 S.E.2d 535, 541 (2015) (quoting *Capps v. Lynch*, 253 N.C. 18, 22, 116 S.E.2d 137, 141 (1960)); *see also Free Spirit Aviation, Inc. v. Rutherford Airport Auth.*, 206 N.C. App. 192, 204, 696 S.E.2d 559, 567 (2010) ("When the trial court exercises its discretion under a misapprehension of the law, it is appropriate to remand for reconsideration in light

of the correct law."). Consequently, in the present case, the dispositive question before us is whether the trial court correctly interpreted and applied the economic loss rule in granting Plaintiff's motion for a directed verdict on Defendant's counterclaim for fraud.

> Simply stated, the economic loss rule prohibits recovery for purely economic loss in tort, as such claims are instead governed by contract law. . . . Thus, the rule encourages contracting parties to allocate risks for economic loss themselves, because the promisee has the best opportunity to bargain for coverage of that risk or of faulty workmanship by the promisor. For that reason, a tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract. It is the law of contract and not the law of negligence which defines the obligations and remedies of the parties in such a situation.

{ "pageset": "Sc7 *Lord v. Customized Consulting Specialty, Inc.*, 182 N.C. App. 635, 639, 643 S.E.2d 28, 30-31 (2007) (citation and alteration omitted).

The economic loss rule was first recognized by our Supreme Court in *N.C. State Ports Authority v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 240 S.E.2d 345 (1978). In that case, the plaintiff entered into a contract with a general contractor to construct two buildings. The general contractor was negligent in his construction of the buildings' roofs, however, and, as a result, they ultimately leaked causing significant

damage to the structures. The plaintiff brought suit against the general contractor for breach of contract and for negligence. *Id.* at 81, 250 S.E.2d at 350.

Our Supreme Court held that the plaintiff was barred from bringing a negligence action against the general contractor pursuant to the economic loss rule given that the existence of the contract between the parties limited the plaintiff's remedies to those arising under the law of contract. *Id.* at 81-82, 250 S.E.2d at 350-51.

Significantly, however, *Ports Authority* and its progeny — despite the use of the broad term "tort" in *Ports Authority's* discussion of the economic loss rule — have been limited in their application to merely barring negligence claims. Indeed,

> [s]ince *Ports Authority* was decided, our appellate courts have applied the economic loss rule on a number of occasions to reject analogous *negligence* claims. *See Williams*, 213 N.C. App. at 6, 714 S.E.2d at 441-42 (economic loss rule precluded *negligence* claim by homeowners against builder where construction contract set forth available remedies and *Ports Authority* exceptions were inapplicable); *Land v. Tall House Bldg. Co.*, 165 N.C. App. 880, 882-83, 602 S.E.2d 1, 3 (2004) (economic loss rule barred *negligence* action by homeowners against contractor based on existence of construction contract between the parties); *Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 42, 587 S.E.2d 470, 476 (2003) ("In accord with the Supreme Court's and our analysis in prior cases, we acknowledge no *negligence* claim where all rights and remedies have been set forth in the contractual relationship."), *disc. review denied*, 358 N.C. 235, 595 S.E.2d 152 (2004).

*Beaufort Builders, Inc. v. White Plains Church Ministries, Inc.*, __ N.C. App. __, __, 783 S.E.2d 35, 40-41 (2016) (emphasis added).

Significantly, the case relied upon by the trial court and Plaintiff, *Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 42, 587 S.E.2d 470, 476 (2003), is such a case where the plaintiff brought a negligence action where a valid contract existed between it and a general contractor. Applying the economic loss rule, this Court, in accord with *Ports Authority*, determined that no cause of action in negligence could lie and the plaintiff's remedies instead were limited to those arising under the law of contract. *Id.* at 44, 587 S.E.2d at 477. Critically, however, *Kaleel Builders, Inc.* did not contemplate a claim for fraud.

This is significant in light of this court's holding in *Jones v. Harrelson & Smith Contr'rs, LLC*, 194 N.C. App. 203, 670 S.E.2d 242 (2008), *aff'd per curiam*, 363 N.C. 371, 677 S.E.2d 453 (2009). In *Jones*, among other claims, the plaintiff brought a fraud claim against the defendant home mover where a contract existed between the parties. *Id.* at 214-15, 670 S.E.2d at 250. After initially denying the defendant's motion for a directed verdict, the trial court subsequently granted the defendant's motion for judgment notwithstanding the verdict on the plaintiff's fraud claim. *Id.* at 214, 670 S.E.2d at 250.

This Court stated on appeal the following:

> According to [the defendant], [the plaintiff] was . . . limited
> to suing for breach of contract. [The defendant], however,

cites no authority supporting its assumption that a plaintiff cannot sue for fraud if she has a breach of contract claim. The law is, in fact, to the contrary: a plaintiff may assert both claims, although she may be required to elect between her remedies prior to obtaining a verdict.

*Id.* at 215, 670 S.E.2d at 250.

In the present case, the trial court stated the following:

THE COURT: All right. I understand your arguments, they're very well-made, they're - but *Kaleel* disagrees with you. The North Carolina Court of Appeals and the *Kaleel* decision is (inaudible) So, a tort action and all these other things that you've planned are tort action does not lie against the party to a contract who simply fails to properly perform the terms of the contract, even if that failure to properly perform was intentional when the injury resulting from the breach is damage to the subject matter of the contract.

In light of this colloquy, we are convinced that the trial court operated under a misapprehension of the law as it applies to fraud claims which are brought by a plaintiff where a valid contract exists between the litigants. Such claims are, in fact, allowable as has been clearly established by *Jones*.

Moreover, as noted above, *Ports Authority* and analogous cases applying the economic loss rule are limited in scope to claims for negligence and have never applied the doctrine to claims for fraud brought contemporaneously with claims for breach of contract. Therefore, we hold that *Jones*, *Ports Authority*, and *Kaleel Builders, Inc.* are in accord and establish that while claims for negligence are barred by the economic loss rule where a valid contract exists between the litigants, claims for fraud

are not so barred and, indeed, "[t]he law is, in fact, to the contrary: a plaintiff may assert both claims[.]" *Jones*, 194 N.C. App. at 215, 670 S.E.2d at 250.

Consequently, the trial court erred in entering a directed verdict against Defendant on her counterclaim for fraud. As a result, we must reverse the trial court's entry of directed verdict as to this cause of action.

Moreover, because Defendant's fraud counterclaim is factually interwoven with her remaining counterclaims and directly touches and concerns Plaintiff's overall liability, our reversal of the trial court's entry of directed verdict as to this counterclaim directly impacts the jury's verdict in its entirety to the extent that we cannot narrowly remand for a new trial on Defendant's fraud counterclaim alone, but rather are compelled to remand for a new trial on all issues. It is well settled that "[i]n ordering a new trial, it is within the discretion of this Court whether to grant a new trial on all issues." *Cicogna v. Holder*, 345 N.C. 488, 490, 480 S.E.2d 636, 637 (1997); *see also Mesimer v. Stancil*, 45 N.C. App. 533, 535, 263 S.E.2d 32, 33 (1980) ("In our discretion, we order a new trial on all issues.").

We have consistently maintained that

> [a] partial new trial should be ordered when the error is confined to one issue, which is entirely separable from the others and it is perfectly clear that there is no danger of complication. . . . Where it appears that the verdict was the result of a compromise, such error taints the entire verdict and requires a new trial as to all of the issues in the case. . . . a new trial as to damages alone should not be granted where there is ground for a strong suspicion that the jury

> awarded inadequate damages to the plaintiff as a result of
> a compromise involving the question of liability.

*Hous., Inc. v. Weaver*, 305 N.C. 428, 442-43, 290 S.E.2d 642, 650-51 (1982) (internal citations, quotation marks, and brackets omitted); *see Robertson v. Stanley*, 285 N.C. 561, 569, 206 S.E.2d 190, 196 (1974) ("In our opinion, the issues of negligence, contributory negligence, and damages are so inextricably interwoven that a new trial on all issues is necessary."); *Weyerhaeuser Co. v. Godwin Bldg. Supply Co.*, 292 N.C. 557, 566, 234 S.E.2d 605, 610 (1977) ("[W]e find that on the present record the question of damages on defendant's counterclaim is so intertwined with the issue of liability that to grant a new trial on the issue of damages only might well result in confusion and uncertainty and in injustice to one or both of the parties. For these reasons and to insure that all the facts bearing on the issue of damages are fully developed and the issue itself more clearly presented, we are constrained to award a new trial on the entire counterclaim."); *Handex of Carolinas, Inc. v. Cnty. of Haywood*, 168 N.C. App. 1, 20, 607 S.E.2d 25, 37 (2005) ("In light of the single-figure jury verdict, we cannot determine whether the jury awarded damages pursuant to any of the four claims properly submitted to the jury, and we are therefore constrained to grant a new trial to determine both the question of liability and damages as to these four claims.").

Because we cannot say that had Defendant's fraud counterclaim been submitted to the jury the result as to liability or the amount of damages awarded

would have been the same, we are compelled to order a new trial on all issues. In addition, in light of our disposition on this issue, we do not reach Defendant's remaining issues on appeal. *See Roberts v. Edwards*, 48 N.C. App. 714, 719, 269 S.E.2d 745, 748 (1980) ("In light of our disposition of this case, it is not necessary to consider the remaining assignments of error. Although the error in excluding the witnesses' testimony relates to the damages issue, in our discretion, we order a new trial on all the issues."); *see also Hobson Const. Co. v. Great Am. Ins. Co.*, 71 N.C. App. 586, 591, 322 S.E.2d 632, 635 (1984) ("Our resolution of the first assignment of error disposes of the appeal and makes it unnecessary to consider appellants' remaining assignments of error.").

II. Expert Opinion Testimony

While, for the reasons stated above, we grant Defendant a new trial on all issues, thereby foreclosing the need to discuss the remaining issues brought on appeal, we nevertheless elect to address, in our discretion, the issue of whether Shane Haddock was properly qualified as an expert witness in cabinetry given the potential likelihood that this issue may again arise below.

Rule 702(a) of the North Carolina Rules of Evidence provides that

> (a) If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:

(1) The testimony is based upon sufficient facts or data.

(2) The testimony is the product of reliable principles and methods.

(3) The witness has applied the principles and methods reliably to the facts of the case.

It is well settled that "[t]he trial court has broad discretion in the determination and admission of expert testimony. The decision to qualify a witness as an expert is ordinarily within the exclusive province of the trial judge or hearing officer." *Stark v. N.C. Dep't of Env't & Nat. Res., Div. of Land Res.*, 224 N.C. App. 491, 498-99, 736 S.E.2d 553, 559 (2012) (internal citations and quotation marks omitted). Moreover, " '[a] finding by the trial court that the witness is qualified will not be reversed unless there was no competent evidence to support it or the court abused its discretion.' " *Id.* at 499, 736 S.E.2d at 559 (quoting *State v. Love,* 100 N.C. App. 226, 232, 395 S.E.2d 429, 433 (1990)).

Here, Plaintiff tendered Haddock as an expert witness in cabinetry who testified as follows:

> Q. Mr. Haddock, please introduce yourself to the jury.
>
> A. I'm Shane Haddock, uh, I've been doing cabinets for 17 years.
>
> Q. What do you currently do?

A. I'm still doing cabinets, but, uh, at the time, whenever I was asked, I was with Knowles Cabinets, outside president of operation. First of last year, I left and went with, uh, Reward Builders and we started our own line of cabinets.

Q. You said you've got 17 years of experience doing cabinets?

A. Yes, sir.

Q. Um, was – who was that for?

A. That was for Knowles Cabinets.

Q. Uh, and what type of cabinets did you, um, work with?

A. We did custom cabinets, which were called European Cabinets. You have (inaudible) frame cabinets and you have European Cabinets and we opted to build the European Cabinets.

Q. Do you have any special, uh, training outside of on the job training, um, for those – for working with cabinets?

A. Outside training meaning what?

Q. Uh, college courses, anything like that?

A. Well, I mean, we went – I went to school to learn how to run all the equipment that we had, but as far as training, no. It's pretty much you – you learn as you go.

Haddock then went on to testify that he personally examined Plaintiff's cabinetry work at Defendant's home and evaluated whether the work had been performed adequately.

As our Supreme Court has recently maintained,

> [e]xpertise can come from practical experience as much as from academic training. Whatever the source of the witness's knowledge, the question remains the same: Does the witness have enough expertise to be in a better position than the trier of fact to have an opinion on the subject? The rule does not mandate that the witness always have a particular degree or certification, or practice a particular profession. . . . As is true with respect to other aspects of Rule 702(a), the trial court has the discretion to determine whether the witness is sufficiently qualified to testify in that field.

*State v. McGrady*, 368 N.C. 880, 889-90, 787 S.E.2d 1, 9 (2016) (internal citations omitted).

In *Kenney v. Medlin Const. & Realty Co.*, 68 N.C. App. 339, 315 S.E.2d 311 (1984), this Court addressed the qualifications of a witness as an expert in residential construction. In determining that the witness was properly qualified as an expert we stated the following: "We find no abuse of discretion in the trial court determination that Jones, who had been involved in building more than 200 residences, including eight to twelve in plaintiff's subdivision, was an expert, better qualified than the jury to form an opinion as to the quality of workmanship and damage resulting from the construction of plaintiff's house. That Jones was not a licensed contractor does not render his opinion testimony inadmissible." *Id.* at 342-43, 315 S.E.2d at 314.

In light of the above cited authority, we are satisfied that there was competent evidence in the present case, based upon his testimony, that Haddock possessed the

requisite level of experience and expertise to testify as an expert witness in cabinetry. While Haddock did testify that he was "not really going to say there are any standards" regarding the cabinet industry in Wake County, he went on to clarify that he was not aware of any licensure requirements to perform cabinetry work. Additionally, he provided a follow-up response to the question of whether there were industry standards for cabinetry in Wake County as to the "accepted practice of the way people would build custom cabinets," however, his answer was inaudible and was consequently not transcribed by the court reporter. In any event, these statements are more properly characterized as speaking not to Haddock's qualifications as an expert, but rather as to his credibility — which is appropriately attacked not through seeking exclusion by the trial court, but rather by means of cross-examination by opposing counsel. *See State v. Turbyfill*, __ N.C. App. __, __, 776 S.E.2d 249, 258 (" '[O]nce the trial court makes a preliminary determination that the scientific or technical area underlying a qualified expert's opinion is sufficiently reliable (and, of course, relevant), any lingering questions or controversy concerning the quality of the expert's conclusions go to the weight of the testimony rather than its admissibility.' " (quoting *State v. Taylor*, 165 N.C. App. 750, 756, 600 S.E.2d 483, 488 (2004))), *disc. review denied*, 368 N.C. 603, 780 S.E.2d 560 (2015); *see also Hairston v. Alexander Tank & Equip. Co.*, 310 N.C. 227, 244, 311 S.E.2d 559, 571 (1984) ("It is the function of cross-examination to expose any weaknesses in [expert witness] testimony[.]").

Consequently, we find that the trial court did not abuse its discretion in qualifying Haddock as an expert witness on cabinetry. *See Stark*, 224 N.C. App. at 499, 736 S.E.2d at 559 (" 'A finding by the trial court that the witness is qualified will not be reversed unless there was no competent evidence to support it or the court abused its discretion.' " (quoting *State v. Love*, 100 N.C. App. 226, 232, 395 S.E.2d 429, 433 (1990))).

## Conclusion

For the reasons stated above, the judgment and 22 February 2016 order of the trial court are reversed, and we remand for a new trial on all issues.

NEW TRIAL.

Chief Judge McGEE and Judge BRYANT concur.