Caruthers, J.,
delivered the opinion of the Court.
In the month of 'June, 1847, J. M. Rison effected an insurance of $2,000.00 upon his life, in the “Mutual Life Insurance Company of New York,” through its agent, A. S. Caldwell, at Memphis, for the term of seven years, at a certain annual premium. He died intestate, in February, 1852, leaving the complainants, consisting of his wife and children. In 1848, this policy was transferred with the assent of the agent, by assignment to the defendants, as collateral security for a note of $1097, given for a bill of goods then purchased from them. The said Rison having failed after the first year, to pay the annual premiums, the policy would have been forfeited and lost, but for the acts of the defendants, in discharging them at the, proper times, down to the death. After the death of Rison, the defendants received as assignees $1980 upon said policy, and claimed to hold *568 not only the amount of the note with interest which it was intended to secure, and the amount advanced by them for premiums to keep the policy alive, but also the balance of the amount received, except so much as they might voluntarily donate to the family in their poverty. The complainants, on the other hand, claim the whole amount, without paying the note of $1097, or the said advances upon the premiums. This bill is grounded upon the provisions of the act of 1846, ch. 216, § 3; Nich. Sup. 280. It is in these words: “ That from and after the passage of this act, whenever any married woman may cause a life insurance to be effected upon her husband’s life, the said insurance shall in no case be subject to execution or attachment for the debts of said husband, but the same shall enure to the benefit of the widow and heirs of said husband. And further, that any husband may effect a life insurance on his own life, and the same shall in all cases enure to the benefit of his widow and heirs, in the present rates of distribution, without being in any manner subject to the debts of [said husband, whether by attachment, execution or otherwise.”
It is contended that this act operates as a settlement upon the widow and children of the insured, and cannot be divested from their use and benefit by any act of his, or his creditors. It would be more difficult to meet this argument, if indeed, it could be successfully met at all, if the policy had expressly provided that in the event of death, the sum secured should be paid to the widow and children. But this is an ordinary policy upon his life, without any spe *569 cial stipulations of that or any other kind. So the case is to be decided upon the construction of the act alone. Its phraseology is very strong and forcible, in favor of the rights of the widow, in exclusion of creditors. But it must have given to it, a sensible construction, promotive of the intention of the legislature. Without -this act the insurance money would go to the personal representative of the deceased, and constitute assets in his hands, subject to the payment of debts. ‘ Before the act, creditors would have preference over the family, but since, the latter have the exclusive claim to the particular fund.
The wisdom and humanity of the law, may be admitted, but surely it was not intended to divest the insured, while he lived, of the right of disposing of his own as he pleased, so as to bind those who might come after him and stand in his shoes. This would be the effect of the construction contended for by the complainants.
We think that nothing more is intended by the act and that no other operation can be given to it, than to prevent a fund of this kind from passing into the hands of the administrator with the other effects of the insured, in favor of the widow and children, or in other words, to prefer them to creditors to that extent. But it can only apply where the claim remains undisposed of by the deceased. His power over it during his life is not at all affected by the act, but continues as ample and unrestricted as before.
This method is often resorted to, as in this case, by men in slender circumstances, whose ability to pay is supposed to depend upon their personal exertions, *570 and it cannot be supposed that the legislature intended to deprive poor men of this mode of obtaining credit, and thereby getting into business, and making a living for themselves and families.
We do not feel constrained so to construe the language used in the act before us, but are of opinion that to give it such an operation would be going beyond the objects and intention of the Legislature.
But the transfer was only made to secure the debt of the defendants, and they can retain no more of the fund than is sufficient for that purpose, and to reimburse the amount paid by them in annual premiums; the balance must .go to the complainants.
So held the Chancellor, and his decree is affirmed with costs.