**Henry L. and Geneva M. DIXON,**
**Appellees,**

v.

**MOUNTAIN CITY CONSTRUCTION**
**COMPANY, Appellant.**

Supreme Court of Tennessee.

May 3, 1982.

Phillip C. Lawrence, Selma C. Paty, Paty, Rymer & Ulin, P. C., Chattanooga, for appellant.

Thomas M. Fleming, Wolfe, Jenkins & Grantham, P. C., J. Troy Wolfe, Wolfe, Jenkins & Grantham, P. C., Chattanooga, for appellees.

## OPINION

FONES, Justice.

Plaintiffs, Henry Dixon and wife Geneva Dixon, brought suit against defendant, Mountain City Construction Company, for defects in the construction of a residence allegedly attributable to poor workmanship and materials. The uniform real estate sales contract between plaintiffs, as purchasers of a residence to be built according to plans and specifications, and defendant, as builder-vendor, contained no provision with respect to the quality of workmanship or materials. The gravamen of plaintiffs' suit is three pronged. First they insist that

defendant's president made an express warranty that the house would be built in a good workmanlike manner and guaranteed for one year after closing. Second plaintiffs insist that there prevails in the Chattanooga area, by usage and custom among builders, a one-year warranty of workmanship and materials that is legally binding upon defendant. Third, if they should be mistaken as to those contentions, plaintiffs urge that Tennessee join the majority of American jurisdictions that have abandoned the Doctrine of Caveat Emptor and imposed upon builder-vendors an implied warranty of good workmanship and materials, in comparable factual situations.

There was a concurrent finding by the chancellor and the Court of Appeals that plaintiffs proved defects of a substantial nature attributable to poor workmanship and material, that did not appear or were not reasonably discoverable until after the closing. The learned chancellor held that the written contract provided no relief for plaintiffs and that this Court had rejected the "implied warranty concept" in *Zack Cheek Builders, Inc. v. McLeod*, 597 S.W.2d 888 (Tenn.1980). The trial court held that the testimony of Mr. and Mrs. Dixon with respect to the oral warranty was inadmissible being in violation of the parol evidence rule.

The Court of Appeals held that *Zack Cheek Builders* had no application to this case, but that plaintiffs were entitled relief under the principles announced by the Court of Appeals in *Chastain v. Billings*, 570 S.W.2d 866 (Tenn.App.1978); and *Vincent v. Jim Walter Homes, Inc.*, an unpublished opinion released by the Court of Appeals, Eastern Division, August 15, 1978, certiorari denied concurring in results only, May 7, 1979. We are of the opinion that those cases as well as *Zack Cheek Builders* are inapposite and that in the present posture of this case, plaintiffs' relief depends solely upon the viability of an implied warranty of good workmanship and materials.

I.

Lawson Whittaker was engaged in the real estate business and also built homes, using the corporate entity Mountain City Construction Company. He was President of that corporation and represented the corporation in all of its dealings with plaintiffs.

Plaintiffs lived in Pennsylvania until Mr. Dixon was employed as plant manager of a carpet company in Trion, Georgia and they decided that Signal Mountain would be a good place to live. Hilda Atkinson, a real estate sales person, showed them some homes among which were houses under construction by defendant. Ms. Atkinson introduced plaintiffs to Whittaker but did not take part in the negotiation of the contract between plaintiffs and defendant. The broker for whom she worked was paid a finder's fee, and was sued by plaintiffs, but that action was properly dismissed by the learned chancellor at the conclusion of plaintiffs' proof.

Plaintiffs liked a two-story, four bedroom residence that defendant had built or was under construction on Signal Mountain. Negotiations were conducted with Whittaker to build a similar house for plaintiffs, with an additional bedroom in the basement, on a lot owned by defendant. A written contract was executed by the parties on May 12, 1978, using a form prepared for use by members of the Chattanooga Board of Realtors, Inc. The Contract price was $112,000, and the filled-in portion of the standard form real estate sales contract relating to the construction of the house was as follows:

"Proposed construction on lot on Dunsinore Lane. Legally known as Lot 92, Hidden Brook Addition....

Home to be completed in accordance with plans and specifications—all fill dirt and blasting of rock will be at extra cost to buyers, paid at closing. Contractor will make every effort to complete in four months."

Attached to the one page form contract was a four page form entitled "Description of Materials" specifying materials to be used in the construction of the foundation, exterior walls, floors and sub-floors, fram-

ing, roofing, plumbing, heating, wiring, cabinets, etc. The written contract contained no reference whatever to the quality of workmanship expected of the builder and the material specifications would obviously allow the builder a wide range of quality in the selection and use of materials.

## II.

Since WWII there has been a dramatic increase in the sales of newly constructed homes by builder-vendors,—defined as persons or business entities engaged in constructing homes on real estate they own for sale to the home buying market. Traditionally the contract has been a standard form real estate sales contract that contained no warranties applicable to the construction of the house and upon the closing of the sale of the land, the doctrine of caveat emptor negated any implied warranty with respect to construction or the condition of the premises and left the purchaser with no avenue of relief for defects in workmanship or materials.

The first breach of the caveat emptor bastion as it concerns real estate purchases, was by an English court in *Miller v. Cannon Hill Estates, Ltd.*, 2 K.B. 113 (1931). The purchaser bought a home from a builder-vendor that was under construction at the time the contract was signed. The English court reasoned, in part, that since the vendee had no opportunity to inspect a completed structure, at the time the contract was signed, he must necessarily rely on the skill of the builder. The court imposed liability upon the builder-vendor on an implied warranty of workmanship, materials and fitness for habitation.

Many American jurisdictions have circumvented the doctrine of caveat emptor by predicating liability on other theories such as fraudulent concealment, failure to disclose, strict liability in tort, Restatement, § 402A, the UCC implied warranty of goods and, in the case of injuries resulting from defects in construction, the rule of *McPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916). *See* 14 Vand.L.Rev. 541 (1961), Caveat Emptor in Sales of Realty:

Recent Assaults Upon The Rule; and 25 A.L.R.3d 383, Annotation: Liability of builder-vendor or other vendor of new dwelling for loss, injury or damage occasioned by defective condition thereof.

Our Court of Appeals has contributed to the circumvention movement.

In *Haynes v. Morton*, 32 Tenn.App. 251, 222 S.W.2d 389 (1949), a builder-vendor was building several types of houses in the Sherwood Forest subdivision in Memphis. Purchaser was referred to some completed houses to pick out the type he wanted and was then shown the plans and specifications for that type house. The uniform real estate sales contract entered into between plaintiff and defendant described the property as lot four of the subdivision, "upon which is being erected a five room brick bungalow." There was no written warranty although purchaser testified the salesman represented the house would be built of "top-notch and 'A' number-one" material." Some items were not satisfactory or complete at the time of closing, but the builder-vendor orally promised to remedy those defects. Other defects and omissions apparently appeared after the closing. The trial court applied the rule of caveat emptor and directed a verdict for defendant builder-vendor at the conclusion of all of the proof. The Court of Appeals reversed and remanded for a new trial upon the theory that the agreement to construct improvements on the lot was "collateral and an inducement to the contract for the sale of the lot"; that the collateral agreement did not fall within the statute of frauds and that such damages as were within the contemplation of the parties attendant to the collateral agreement were unaffected by the rule of caveat emptor.

In *Vincent v. Jim Walter Homes, Inc.*, *supra*, Vincent contracted with the builder to construct a house on Vincent's lot. Defective wiring caused a fire that substantially damaged the house, and a jury awarded plaintiffs damages in excess of $25,000. The Court of Appeals held that since Vincent owned the lot upon which the house was constructed and no warranty deed

passed from the builder to Vincent, the doctrine of caveat emptor did not apply. The trial court had submitted to the jury plaintiff's theories of strict liability in tort, in accord with Restatement § 402A and the UCC implied warranties set forth in T.C.A. § 47–2–314. The Court of Appeals held that the UCC implied warranty did not apply but that where a property owner contracted for a house to be built upon his lot the structure was a "product" within the concept of strict liability in tort as stated in Restatement § 402A. The Court of Appeals took the additional step of adopting an implied warranty that the house would be built, "in a workmanlike manner and suitable for habitation," relying upon cases involving a builder-vendor and a purchaser in factual circumstances more akin to the instant case than to *Vincent.*

Our research reveals that at least twenty-seven state jurisdictions have adopted one of the several theories that allow an initial purchaser of a new house from a builder-vendor, relief upon proof of defects caused by faulty workmanship or material in the absence of any written warranty or written disclaimer of warranty. We disapprove of the adoption of circumvention theories. We prefer to meet the issue head-on and align ourselves with those jurisdictions that recognize that the home buying public has a legitimate expectation that the workmanship and materials used by the builder-vendor in the construction of a dwelling will meet the standard of the trade for homes in comparable locations and price range and that such a warranty is implicit in the contract and survives the passing of title to the real estate and the taking of possession, as an exception to the doctrine of caveat emptor. *See, Carpenter v. Donohoe*, 154 Colo. 78, 388 P.2d 339 (1964); *Crawley v. Terhune*, 437 S.W.2d 743 (Ky.1969); *Henggeler v. Jindra*, 191 Neb. 317, 214 N.W.2d 925 (1974); *Oliver v. City Builders, Inc.*, 303 So.2d 466 (Miss.1974); *Norton v. Berleared*, 115 N.H. 435, 342 A.2d 629 (1975); *Pollard v. Saxe and Yolles Development Co.*, 12 Cal.3d 374, 115 Cal.Rptr. 648, 525 P.2d 88 (1974); and *Hartley v. Ballou*, 286 N.C. 51, 209 S.E.2d 776 (1974).

The rational for such an exception is well stated in *Pollard v. Saxe and Yolles Development Co., supra* 115 Cal.Rptr. 651, 525 P.2d at 91.

"In the setting of the marketplace, the builder or seller of new construction—not unlike the manufacturer or merchandiser of personalty—makes implied representations, ordinarily indispensible to the sale, that the builder has used reasonable skill and judgment in constructing the building. On the other hand, the purchaser does not usually possess the knowledge of the builder and is unable to fully examine a complete house and its components without disturbing the finished product. Further, unlike the purchaser of an older building, he has no opportunity to observe how the building has withstood the passage of time. Thus, he generally relies on those in a position to know the quality of the work to be sold, and his reliance is surely evident to the construction industry."

In a factual situation similar to the instant case the North Carolina Supreme Court in *Hartley v. Ballou, supra*, noting the trend of decisions as reflected in the annotation in 25 A.L.R.3d 383, adopted the following implied warranty:

"[w]e hold that in every contract for the sale of a recently completed dwelling, and in every contract for the sale of a dwelling then under construction, the vendor, if he be in the business of building such dwellings, shall be held to impliedly warrant to the initial vendee that, at the time of the passing of the deed or the taking of possession by the initial vendee (whichever first occurs), the dwelling, together with all its fixtures, is sufficiently free from major structural defects, and is constructed in a workmanlike manner, so as to meet the standard of workmanlike quality then prevailing at the time and place of construction; and that this implied warranty in the contract of sale survives the passing of the deed or the taking of possession by the initial vendee." *Id.* 209 S.E.2d at 783.

542

We adopt that implied warranty rule in this State and in accord with the factual situation in the present case hold that it shall also apply where, at the time the contract is entered into, a dwelling is to be constructed by the builder-vendor. This warranty is implied only when the written contract is silent. Builder-vendors and purchasers are free to contract in writing for a warranty upon different terms and conditions or to expressly disclaim any warranty.

This case is remanded to the Chancery Court of Hamilton County for a new trial on the issue of the damages sustained by plaintiffs resulting from breach of the implied warranty. Costs are adjudged against Mountain City Construction Company.

HARBISON, C. J., and COOPER, BROCK and DROWOTA, JJ., concur.