**Yvonne JETT, Individually, and Estate of Paul Jett by Yvonne Jett, Administratrix, Plaintiff and Counter-Defendant-Appellee,**

v.

**BANK OF TROY, Defendant and Counter-Plaintiff-Appellant.**

Court of Appeals of Tennessee, Western Section, at Jackson.

May 10, 1984.

Application for Permission to Appeal Denied by Supreme Court July 23, 1984.

Bruce Conley, Damon E. Campbell and Bruce Moss, Union City, for plaintiff and counter-defendant-appellee.

William B. Acree, Jr., Union City, for defendant and counter-plaintiff-appellant.

NEARN, Presiding Judge, Western Section.

In June, 1979, the plaintiff and her husband, Paul Jett, executed a $100,000.00 note payable to the defendant Bank. The note was secured by a deed of trust on seventy acres and a home owned jointly by the plaintiff and her husband and by all the equipment, inventory, fixtures and accounts receivable of Jett Electronics. In addition, after the note was signed, Paul Jett purchased a life insurance policy on himself for $125,000.00 and named the Bank as a beneficiary. The insurance was not "credit" life insurance purchased through the lender, but was part whole life ($25,000.00) and part reducing term ($100,-000.00) insurance. The insurance was purchased independently by the borrower and the borrower could have changed the beneficiary at any time without notice. The Bank was named as primary beneficiary "as its interests may appear" and the plain-

tiff was named as a contingent beneficiary. Subsequent to this, Mr. Jett signed several other notes to the Bank that were neither secured nor co-signed by his wife. These notes were in the amount of approximately $40,000.00.

Paul Jett died in November of 1981. The Bank received $99,169.00 as proceeds from the policy and applied the money first to the unsecured notes of Mr. Jett. The remainder of the proceeds were applied to the June 1979 joint indebtedness, leaving Mrs. Jett liable to the Bank on that indebtedness for approximately $40,000.00.

Mrs. Jett sued, individually and as administratrix of her husband's estate, requesting that the Bank be ordered to apply the proceeds of the insurance policy to the June 1979 joint indebtedness.

The Bank answered, denying that the proceeds had to be applied to the joint indebtedness, and further, that all the notes were partnership debts of Jett Electronics, a business run as a partnership by Mr. and Mrs. Jett, and that she was therefore liable, as a matter of law, on all the notes. The Bank also counterclaimed, suing on all the notes.

The Chancellor held that "... it was the intention of the parties at that point in time [when the joint note was executed] that in case of the death of Mr. Jett the life insurance would be used to pay this particular debt ..." Additionally, he held that Mrs. Jett was not liable on any note not signed by her and that Mr. and Mrs. Jett were not partners in Jett Electronics prior to Mr. Jett's death.

The Bank appeals and raises two issues: 1. Whether the defendant bank could apply the proceeds from the life insurance policy to any indebtedness owed to it by the decedent-insured, or should it have been applied to a particular note. 2. Did Paul N. Jett and Yvonne Jett operate Jett Electronics as a partnership as a matter of fact or estoppel, and were the unsecured business debts properly payable from the proceeds of the life insurance policy which was paid for with funds from the business.

■ The widow does not claim as a beneficiary under the policy, she only seeks to have the agreement between her husband and the Bank enforced. The Chancellor found that it was the agreement of those parties that the insurance proceeds were to be applied to the June 1979 loan of $100,-000.00. The evidence not only does not preponderate against such finding, but preponderates heavily in its favor. The insurance was purchased at the time the $100,-000.00 loan was made. The Bank employee who made the loan to Mr. Jett testified that insurance was discussed only in relation to the $100,000.00 loan. Further, that Mr. Jett stated that said amount was all that he would need to borrow from the Bank. In addition, the Bank employee stated the insurance was never again discussed with Mr. Jett, although he later did borrow additional sums from the Bank evidenced by separate and distinct notes. There is nothing in writing to indicate that the insurance was to be applied to any particular debt transaction. However, it was purchased at the time the $100,000.00 loan was made and the Bank considered it at that time additional collateral for that loan. It cannot be doubted that the parties considered that the insurance was applicable to that loan. Absent a writing, how will it be applicable to other loans? It will be applicable only upon a showing of facts that would support a finding that such was the intent of the parties. The Bank's own proof negates any possibility of such intent on the part of Mr. Jett. Its proof shows that at the time of the $100,000.00 loan Jett's express intent was not to borrow any further funds from the Bank. Such being true, how could Jett have intended that the insurance proceeds would apply to future loans that he did not intend to make? The Bank may have so intended, but it was not Jett's intent. The burden of proof was on the Bank to show that both parties had reached an agreement that the insurance proceeds would apply to future loans. We concur in the Chancellor's finding that it was proved that the parties mutually agreed only that those proceeds were to be applied to the $100,-

000.00 loan. That which the Bank unilaterally intended is not a matter of mutual agreement.

All of the cases cited by the appellant relating to this issue involve disputes over insurance proceeds between secured lenders and widows or heirs of the borrower. In all of them, there was an express agreement between the bank and the borrower that the insurance policy would cover all the debts owed by the debtor. See *Nashville Trust Co. v. First National Bank*, (1910) 123 Tenn. 617, 134 S.W. 311; *Insurance Co. v. Dunscomb*, (1902) 108 Tenn. 724; *Rison v. Wilkerson & Co.*, (1856) 35 Tenn. 565; *Central State Bank v. Edwards*, (1937) 21 Tenn.App. 418, 111 S.W.2d 873. The widow here is not disputing that the Bank is the beneficiary of the funds, she is merely disputing how those funds are to be applied.

■ We also hold that the evidence does not preponderate against the Chancellor's finding that Jett Electronics was not a partnership and that Mrs. Jett is not responsible for any indebtedness that she did not sign.

■ The financing statement filed by the Bank on the business security (equipment, fixtures, inventory and accounts receivable) for the joint indebtedness was filed on Paul Jett d/b/a Jett Electronics. The Bank president testified at trial that the only reason he thought it was a partnership was because Mrs. Jett worked at the business with her husband. In order for there to be a partnership by estoppel under T.C.A. § 61-1-115, the party must represent himself or herself to be a partner. There is no evidence in the record to support a finding of partnership by estoppel on the part of Mr. or Mrs. Jett.

The judgment below is affirmed. Costs of this appeal are assessed against the appellant.

Done at Jackson in the two hundred and eighth year of our Independence and in the one hundred and eighty-ninth year of Statehood.

CRAWFORD and HIGHERS, JJ., concur.