**Woody P. DEWBERRY and Marina K. Dewberry, Plaintiffs/Appellants and Appellees,**

**v.**

**James R. MADDOX, Jr., Maddox Realty Company, Inc., Ralph Jones, and Ralph Jones & Associates, Inc., Defendants/Appellees,**

**and**

**Berry V. Evans, Jr., Defendant/Appellant.**

Court of Appeals of Tennessee, Western Section at Jackson.

Feb. 18, 1988.

Permission to Appeal Denied by Supreme Court June 27, 1988.

John S. Richbourg and James W. Hodges, Jr., Memphis, for Woody P. Dewberry and Marina K. Dewberry

Henry M. Beaty, Beaty & Smith, Memphis, for Berry V. Evans, Jr.

Lloyd C. Kirkland, Jr., Memphis, for Ralph Jones and Ralph Jones & Associates, Inc.

HIGHERS, Judge.

This appeal comes from the Circuit Court at Shelby County and involves a claim for damages for the negligent construction of a house and for the breach of the implied warranty of good workmanship and materials.

On April 20, 1982, plaintiffs Woody and Marina Dewberry signed a contract for the purchase of a new home, located at 615 Lancelot Lane in Shelby County, which was built and owned by defendants James Maddox and Berry Evans. Maddox and Evans entered into a partnership in 1979 in order to construct and sell houses. The house purchased by plaintiffs was the second, and last, house built by Maddox and Evans. In addition, Maddox and Evans were working as real estate agents for defendant Maddox Realty Company, Inc. (Maddox Realty) at the time the contract was entered into with plaintiffs.

In order to construct the house from the plans drawn by defendants Ralph Jones and Ralph Jones & Associates, Inc., (hereinafter collectively referred to as Jones and Associates) Maddox and Evans hired Roy Watkins, a general contractor, as the job superintendent. As construction of the house progressed, all required inspections (footing, plumbing, post hole, electrical and framing) were made and passed. On November 6, 1980, a temporary final inspection was made. Maddox Realty subsequently advertised the house for sale.

The sale of the house to plaintiffs was closed on May 28, 1982, and they immediately moved in. In March or April of 1983, plaintiffs noticed that their back door would not close properly. Plaintiffs contacted Maddox and Evans and they immediately remedied the problem. A few months later plaintiffs were having the same problem with another door. Maddox and Evans fixed the problem by completely rebuilding the door frame.

Thereafter, in December of 1983, plaintiffs discovered a crack in their kitchen floor which went all the way through the concrete slab. Roy Watkins inspected the crack and suggested a way to fill it. Plaintiffs refused Watkins' advice and this action ensued.

Plaintiffs filed this action in the Circuit Court at Shelby County on December 10, 1984. Plaintiffs have alleged that the house was built in a negligent manner and that defendants breached the implied warranty of good workmanship and materials. Plaintiffs also alleged that the building plans were negligently drafted. At trial, at the close of plaintiffs' proof, the trial court directed a verdict in favor of defendants Maddox Realty and Jones and Associates. After a full trial on the merits, the jury returned a verdict for plaintiffs against Maddox and Evans in the amount of $16,300. Plaintiffs are appealing the directed verdicts for Maddox Realty and Jones and Associates; Evans is appealing the $16,300 verdict for plaintiffs.

Essentially, five issues have been raised on this appeal:

1. Did the trial court err in finding that this action was not barred by the statute of limitations, T.C.A. §§ 28–3–201 to 205 (1965)?

2. Did the trial court err in failing to direct a verdict in favor of Evans on the issue of breach of the implied warranty of good workmanship and materials?

3. Did the trial court err in failing to direct a verdict for Evans on the issue of negligent construction?

4. Did the trial court err in directing a verdict for Maddox Realty?

5. Did the trial court err in directing a verdict for Jones and Associates?

■ The first issue is whether the trial court erred in finding that this action is not barred by the statute of limitations, T.C.A. §§ 28–3–201 to 205 (1965).

T.C.A. §§ 28–3–201 to 205 set forth the applicable statute of limitations for defective improvements to real property. These statutes provide that any action for injury to person or property arising out of defective improvements to real estate must be brought within four years after substantial

**53**

completion of such improvement. If the injury occurs in the fourth year, suit must be brought within one year after the date of the injury, provided, however, that suit must be brought, in all events, no later than five years after the date of substantial completion. *See Watts v. Putnam County*, 525 S.W.2d 488 (Tenn.1975).

The record shows that this action was filed on December 10, 1984. The jury found that the date of substantial completion of the house was after December 10, 1980. Therefore, the trial court found, as a matter of law, that this suit was not barred because it was brought within four years after substantial completion of the house. Jones and Associates contend that the jury's finding is not supported by the evidence.

Our standard of review is one of material evidence; we will set aside this finding of fact by the jury only if it is not supported by any material evidence. Rule 13(d) T.R. A.P. We think the evidence supports the jury's finding that the house was substantially completed after December 10, 1980.

A review of the record shows that Maddox's testimony is inconsistent as to the date of substantial completion:

Q. So, this job was still going on in December of 1980, wasn't it?

A. There were a few things remaining.

Q. Again, in your deposition, page 29, do you remember when you gave this deposition?

A. (Witness nods head affirmatively.)

Q. You were under oath then too, weren't you?

A. That's correct.

Q. On page 29, line 3, question, I asked you the date of—or I didn't ask you. Mr. Jones had asked you in these particular Interrogatories the date of the substantial completion of the residence, and you indicated in your Answer that it was the latter part of December, 1980.

"Answer: Right.

"Question: Upon what did you—how did you determine it was completed in December of 1980?

"Answer: Basically from the inspection reports and the cancelled checks."

So, you had gone and checked and made sure and found that work was being done in the latter part of December of 1980, isn't that correct?

A. That's correct. Some work was still going on.

Q. And when you answered these Interrogatories, you felt the substantial completion date—when you answered these Interrogatories on—let me see when this was—the 29th day of April, 1986, you felt then that the substantial completion date was in the latter part of December of 1980, isn't that correct?

A. I felt that the overall completion was the latter—a few things remaining, the overall completion was the latter part of December, but the substantial completion, I feel, was the temporary final.

Q. But you felt on April 29th, 1986 that it was the latter part of December, didn't you?

A. At that time, I did.

Q. And also on January 22nd, 1987, just a few weeks ago, two weeks ago, you felt that it was in the latter part of December of 1980, isn't that correct?

A. That's what I stated.

Q. And it's only since we've been at this trial and you've—within the last few days that you've changed your mind, isn't it?

A. On the substantial completion, yes.

We think this testimony is adequate to support the jury's findings. As this action was filed within four years of the substantial completion of the house, the trial court was correct in holding, as a matter of law, that it is not barred by the statute of limitations.

The second issue is whether the trial court erred in failing to direct a verdict in favor of Evans on the issue of breach of the implied warranty of good workmanship and materials.

The implied warranty of good workmanship and materials was first recognized in this state in *Dixon v. Mountain City Construction Co.*, 632 S.W.2d 538 (Tenn.

1982). Noting that many jurisdictions had circumvented the doctrine of caveat emptor with regard to newly constructed houses, our Supreme Court adopted the reasoning of the North Carolina Supreme Court in *Hartley v. Ballou*, 286 N.C. 51, 209 S.E.2d 776 (1974):

> "[w]e hold that in every contract for the sale of a recently completed dwelling, and in every contract for the sale of a dwelling then under construction, the vendor, if he be in the business of building such dwellings, shall be held to impliedly warrant to the initial vendee that, at the time of the passing of the deed or the taking of possession by the initial vendee (whichever first occurs), the dwelling, together with all its fixtures, is sufficiently free from major structural defects, and is constructed in a workmanlike manner, so as to meet the standard of workmanlike quality then prevailing at the time and place of construction; and that this implied warranty in the contract of sale survives the passing of the deed or the taking of possession by the initial vendee." *Id.* 209 S.E.2d at 783.

We adopt that implied warranty rule in this State and in accord with the factual situation in the present case hold that it shall also apply where, at the time the contract is entered into, a dwelling is to be constructed by the builder-vendor. This warranty is implied only when the written contract is silent. Builder-vendors and purchasers are free to contract in writing for a warranty upon different terms and conditions or to expressly disclaim any warranty.

*Dixon* at 541–42.

Evans contends that this implied warranty is inapplicable in this case because *Dixon* was decided after the sales contract was signed by the parties. *Dixon* was decided on May 3, 1980, while the sales contract was signed on April 20, 1980. Evans argues that *Dixon's* holding should not be applied retroactively. A close reading of *Dixon* shows that this argument is not well taken.

The exact holding by the *Dixon* court is that the implied warranty will not attach until "the passing of the deed or the taking of possession by the initial vendee (whichever first occurs)...." *Id.* at 541. The record shows that the deed transferring the property and house was signed by the parties on May 28, 1980, and plaintiffs moved in almost immediately. There has been no retroactive application of the *Dixon* holding as the implied warranty attached after *Dixon* was decided.

Evans also contends that the implied warranty is inapplicable because the sales contract contains certain express warranties which replace the implied warranty. The sales contract contains the following provision:

> Seller agrees to have plumbing, heating, electrical, applicances, and air conditioning systems in good working order at time of closing.

We do not think that this express warranty is sufficient to supplant the implied warranty enunciated in *Dixon*. The reason for this warranty is to protect the buyer of a new home from faulty construction or materials. It would completely defeat the precedent set by *Dixon* if a seller could circumvent the implied warranty by expressly warranting some aspect of a new house which has nothing to do with the workmanship or the materials used.

Evans lastly contends that the implied warranty is inapplicable because the sales contract contains a disclaimer of any and all warranties. This provision reads:

> Purchaser accepts Property in its existing condition, no warranties or representations having been made by Seller or Agent which are not expressly stated herein.

We do not think that this provision is adequate to disclaim the implied warranty.

The *Dixon* court, quoting *Pollard v. Saxe and Yolles Development Co.*, 12 Cal. 3d 374, 115 Cal.Rptr. 648, 525 P.2d 88 (1974), adopted the California Supreme Court's rational for this warranty:

> "In the setting of the marketplace, the builder or seller of new construction— not unlike the manufacturer or merchandiser of personalty—makes implied rep-

resentations, ordinarily indispensable to the sale, that the builder has used reasonable skill and judgment in constructing the building. On the other hand, the purchaser does not usually possess the knowledge of the builder and is unable to fully examine a complete house and its components without disturbing the finished product. Further, unlike the purchaser of an older building, he has no opportunity to observe how the building has withstood the passage of time. Thus, he generally relies on those in a position to know the quality of the work to be sold, and his reliance is surely evident to the construction industry." 115 Cal.Rptr. at 651, 525 P.2d at 91. *Dixon* at 541.

■ Because the buyer is completely relying on the skills of the vendor-builder in this situation, we think that in order to have a valid disclaimer of the implied warranty, it must be in clear and unambiguous language. The buyer must be given "adequate notice of the implied warranty protections that he is waiving by signing the contract." *Tyus v. Resta,* 328 Pa.Super. 11, 476 A.2d 427, 432 (1984). In addition, such a "disclaimer" must be strictly construed against the seller. *Id.* This is generally the law in other jurisdictions which have adopted this, or a comparable, implied warranty of good workmanship and materials. *See Belt v. Spencer,* 41 Colo.App. 227, 585 P.2d 922 (1978); *Hesson v. Walmsley Construction Co.,* 422 So.2d 943 (Fla.App. 1982); *Griffin v. Wheeler–Leonard & Co., Inc.,* 290 N.C. 185, 225 S.E.2d 557 (1976).

Based on the foregoing, we hold that the trial court did not err in finding, as a matter of law, that the implied warranty of good workmanship and materials is applicable to the instant case.

The third issue is whether the trial court erred in failing to direct a verdict in favor of Evans on the issue of negligent construction.

■ Evans first argues that, as a matter of law, he is not liable to plaintiffs as the only duty owed by Roy Watkins, the contractor was to Evans and not plaintiffs as prospective purchasers. Evans maintains that since there was no privity between plaintiffs and him when the house was being built, no duty is owed to plaintiffs.

■ This requirement of privity is no longer needed to impose a duty of care on one party who deals with another. *Howell v. Betts,* 211 Tenn. 134, 362 S.W.2d 924 (1962). The *Howell* court held that privity is no longer required if there has been a reasonably foreseeable risk of damage to tangible property, intangible interest, or if life or limb is placed in "reasonably certain peril." *Id.* at 362 S.W.2d at 925–26. Evans' privity or lack thereof with plaintiffs is not a bar to imposing upon him a duty of care to plaintiffs.

■ Evans next contends, as a matter of fact, that he should have been granted a directed verdict.

Our standard of review for determining whether a directed verdict should have been granted by the trial court is to look at all the evidence, take the strongest legitimate view of it in favor of the opponent of the motion, and allow all reasonable inferences drawn from it in his favor. We must discard all countervailing evidence, and if there is any dispute as to any material determinative evidence or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied. *Tennessee Farmers Mut. Ins. Co. v. Hinson,* 651 S.W.2d 235 (Tenn.App.1983). A directed verdict should not be granted if there is any material evidence in the record that would support a verdict for the plaintiff under any theories he has advanced. *See Wharton Transport Corp. v. Bridges,* 606 S.W.2d 521 (Tenn.1980). Pursuant to this standard, we do not believe the trial court erred in sending the issue of negligent construction to the jury.

The record shows the house passed all the required inspections as it was being built. Plaintiffs' expert, however, testified that the crack in the floor was caused by the inadequate bearing capacity of the soil on which the house was built. Evans' expert, in direct opposition, testified that the house did not settle but instead the soil expanded slightly. The evidence conflicts

as to what exactly caused the crack. Plaintiffs' expert contends that the house was negligently built on soil that could not support it causing the house to settle. Evans' expert claims no settling occurred because the soil was able to support the weight of the house. This material dispute in the evidence was enough to send the issue of negligent construction to the jury.

■ The fourth issue is whether the trial court erred in directing a verdict in favor of Maddox Realty. It is plaintiffs' contention that Maddox, Evans, and Maddox Realty were joint venturers or partners by estoppel in building and selling the house to plaintiffs.

■ In order to establish a joint venture relationship between two parties, there must be "a common purpose, some manner of agreement among them and an equal right on the part of each to control both the venture as a whole and any relevant instrumentality." *Cecil v. Hardin,* 575 S.W.2d 268, 271 (Tenn.1978); *see Spencer Kellogg & Sons, Inc. v. Lobban,* 204 Tenn. 79, 315 S.W.2d 514 (1958). The record shows that plaintiffs were unable to prove any right to control this venture on the part of Maddox Realty.

The evidence presented at trial shows that plaintiffs dealt directly with either Maddox or Evans at all times. Although plaintiffs always contacted Maddox and Evans of Maddox Realty, that is where their offices were located. In addition, both Maddox and Evans were employed by Maddox Realty at all pertinent times. Although this evidence shows that the parties were in some way associated, plaintiffs have wholly failed to show how Maddox Realty had any control over the construction of the house.

■ Plaintiffs also allege that Maddox, Evans, and Maddox Realty are partners by estoppel pursuant to T.C.A. § 61–1–115 (1932). This statute reads:

**61–1–115. Partnership by estoppel—**

\*　　\*　　\*　　\*　　\*　　\*

(b) When a person has been thus represented to be a partner in an existing partnership, or with one or more persons not actual partners, he is an agent of the persons consenting to such representation to bind them to the same extent and in the same manner as though he were a partner in fact, with respect to persons who rely upon the representation. Where all the members of the existing partnership consent to the representation, a partnership act or obligation results, but in all other cases it is the joint act or obligation of the person acting and the person consenting to the representation.

Therefore, in order to invoke this statute, a party must represent himself to be a partner. *Jett v. Bank of Troy,* 673 S.W.2d 546 (Tenn.App.1984). Again plaintiffs were unable to show any kind of representation by either Maddox, Evans, or Maddox Realty indicating a partnership.

The record shows that Maddox Realty was listed as the owner of the lot on the electrical permit. In addition, the termite report was sent to Maddox Realty, the survey was charged to Maddox Realty, and the house plans were charged to Maddox Realty. Maddox and Evans, however, on their partnership account, paid the charges for the survey and house plans. All this information was not known by plaintiffs until this lawsuit arose. Plaintiffs had no idea of who was listed on each permit or where certain letters were sent.

Plaintiffs contend that Maddox Realty's listing the house for sale was ample representation in order to establish the partnership. This, however, only establishes that Maddox and Evans were working as real estate agents for Maddox Realty. The record shows that Maddox Realty did not get any commission from the sale and that the contract listed as the sellers only Berry Evans and James Maddox. We find that the trial court was correct in directing a verdict in favor of Maddox Realty because plaintiffs were unable to show either a joint venture or a partnership relationship between Maddox Realty, Maddox, and Evans.

■ The last issue is whether the trial court erred in directing a verdict in favor

of Jones and Associates. Plaintiffs alleged that the plans drawn by Jones and Associates did not conform to the Southern Building Code because: the ceiling joists were aligned at right angles to the roof rafters over the garage area; the lintels supporting the garage door were undersized; and there was no design for the foundation for the garage and bonus room. Jones and Associates contend that Roy Watkins, the contractor, did not follow the plans with regard to these improvements. The testimony of Watkins was that he changed the direction of the ceiling joists in the garage area. In their rebuttal proof, however, plaintiffs introduced photographs of these ceiling joists which show them to be at right angles to the rafters, in direct opposition to Watkins' testimony. In addition, plaintiffs' expert testified that the lintels over the garage door were built according to the plans and in nonconformance with the Southern Building Code. Because there was a conflict in this material evidence, we are of the opinion that the trial court should not have directed a verdict for Jones and Associates but instead should have sent the issue to the jury to determine if the drawing of the plans constituted negligence which was the proximate cause of any damage suffered by plaintiffs.

Accordingly, the decision of the trial court directing a verdict for Ralph Jones and Ralph Jones and Associates is reversed and a new trial is granted with regard to these defendants. The trial court's decision with regard to Maddox Realty and Evans is, in all respects, affirmed. Costs on appeal are taxed equally against Evans, the Dewberrys, and Jones and Associates.

TOMLIN, P.J. (W.S.), and CRAWFORD, J., concur.