IN THE COURT OF APPEALS OF TENNESSEE

| | |
|---|---|
| ROBERT G. BUNCH, et ux. DEBORAH C. BUNCH, | ) C/A NO. 03A01-9705-CV-00154 |
| Plaintiffs-Appellants, | ) |
| v. | ) APPEAL AS OF RIGHT FROM THE ) KNOX COUNTY CIRCUIT COURT |
| GARY J. COOPER, et ux., DOROTHY L. COOPER, and GJC CONSTRUCTION CO., | ) ) ) ) HONORABLE HAROLD WIMBERLY, |
| Defendants-Appellees. | ) JUDGE |

**FILED**

**September 30, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

For Appellants

DONALD E. OVERTON
GLENNA W. OVERTON
Knoxville, Tennessee

For Appellees

DAVID E. SMITH
Hodges, Doughty & Carson
Knoxville, Tennessee

O P I N I O N

AFFIRMED AND REMANDED                              Susano, J.

Robert G. Bunch and his wife, Deborah C. Bunch ("the Buyers"), brought suit against Gary J. Cooper and his wife, Dorothy L. Cooper ("the Sellers"), to recover damages allegedly caused by the Sellers' faulty construction of their house. Their suit is based upon the theory that the sale of their newly-constructed residence is subject to a four-year implied warranty that the house "was fit for the purposes intended." The jury returned a verdict of $1,000 for the Buyers. They appealed, asserting one issue, which, as taken verbatim from their brief, is as follows:

> Whether or not the trial court erred in its instructions to the jury that the one year warranty called "Policies and Procedures" extended to plaintiffs at closing applied to the purchase of the plaintiffs' home from defendants rather than instructing the jury that the four year implied warranty which is extended to plaintiffs by *Dixon v. Mountain City Construction Co*., 623 S.W.2d 538 (Tenn. 1982) applied to the purchase by plaintiffs of their home from defendants.

I.  *Facts*

On July 11, 1992, the Buyers and the Sellers executed a Real Estate Sales Contract ("the Contract"), by the terms of which the Sellers agreed to sell and the Buyers agreed to buy a house to be constructed at 2314 Scanlon Court in Powell for $60,900. The Contract contains no warranties; in fact, it recites, in capital letters, "NO WARRANTY BY SELLER SHALL SURVIVE CLOSING."

2

The Contract is a printed "fill in the blanks" form with the name and address of Wood Smith Real Estate[1] printed at the top of the form. Some, but not all, of the blanks on the Contract are filled in. It provides for a closing date of October 30, 1992. Curiously, the Contract does not indicate, in any way, that the house has not yet been built.

On September 30, 1992, the parties closed the sale and a warranty deed was executed and delivered. The Buyers moved into their residence the same day. At the closing, the Sellers handed the Buyers a 21-page document. The first page reflects the title of the document as "Policy and Procedures." A one-page "Table of Contents" is followed by (a) another cover page entitled "Warranty Procedures," (b) a 17-page "Warranty Statement," and (c) a one-page listing of subcontractors with their phone numbers. The subject document essentially advised the Buyers that the Sellers expressly warranted the construction -- materials and workmanship -- for one year. On the first page of the "Warranty Statement" is found the following disclaimer in capital letters:

> THIS WARRANTY IS IN LIEU OF ALL OTHER
> WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT
> NOT LIMITED TO, IMPLIED WARRANTIES OF
> MERCHANTABILITY, HABITABILITY, AND FITNESS
> FOR A PARTICULAR PURPOSE.

At the closing, the Buyers signed a form entitled "Acknowledgment of Receipt" wherein they "acknowledge[d] receipt from GJC Construction [of] the exclusive and total warranty upon

---

[1]Apparently, Wood Smith Real Estate was not involved in the sale.

the house located at...2314 Scanlon Court, Powell." That document also recites that

> I/we do hereby acknowledge that the warranty herein received is the total and exclusive warranty excluding any and all implied warranties, relating to the home being purchased herein.

The parties agree that there were no discussions regarding warranties prior to the closing.

After the Buyers moved into their new house, they encountered a number of problems, some of which were fixed by the Sellers. Water problems were discovered more than one year after the closing. These problems, which were not remedied by the Sellers, prompted this litigation.

## II.  *The Controversy*

The Buyers argue here, as they did in the trial court, that this sale is subject to an implied warranty, specifically the one first recognized in this jurisdiction in the case of *Dixon v. Mountain City Const. Co.*, 632 S.W.2d 538 (Tenn. 1982). Relying on T.C.A. § 47-2-725, they contend that this implied warranty is for a period of four years.

At trial, the Buyers submitted an proposed jury instruction to the trial court. The charge advised the jury that the subject transaction was subject to a four-year implied warranty of good workmanship and materials. The trial judge

4

refused to give the requested instruction.  He held that the sale
was instead subject to the one-year express warranty alluded to
above.  The Buyers disagree with the trial court's reasoning.
They urge us to find that the fact the Contract was silent as to
any warranties means, as a matter of law, that the implied
warranty recognized in *Dixon* is applicable to this case.


III.  *Law and Analysis*


In *Dixon*, the Supreme Court established what has come
to be known as the implied warranty of good workmanship and
materials.  In so doing, they adopted the implied warranty set
forth in the North Carolina Supreme Court case of *Hartley v.*
*Ballou*, 209 S.E.2d 776, 783 (1974):

> We adopt that implied warranty rule in this
> State and in accord with the factual
> situation in the present case hold that it
> shall also apply where, at the time the
> contract is entered into, a dwelling is to be
> constructed by the builder-vendor.  This
> warranty is implied only when the written
> contract is silent.  Builder-vendors and
> purchasers are free to contract in writing
> for a warranty upon different terms and
> conditions or to expressly disclaim any
> warranty.

*Dixon*, 632 S.W.2d at 542.  The first reported appellate opinion
following *Dixon* that examines the implied warranty under
discussion is the Court of Appeals' decision in the case of
*Dewberry v. Maddox*, 755 S.W.2d 50 (Tenn.App. 1988).  In *Dewberry*,
we addressed the following provisions in a sales contract:

5

> Seller agrees to have plumbing, heating, electrical, appliances, and air conditioning systems in good working order at time of closing.
>
> * * *
>
> Purchaser accepts Property in its existing condition, no warranties or representations having been made by Seller or Agent which are not expressly stated herein.

We held that the "in good working order" statement in that case was not "sufficient to supplant the implied warranty enunciated in *Dixon*." *Id*. at 54. In so doing, we stated that

> [i]t would completely defeat the precedent set by *Dixon* if a seller could circumvent the implied warranty by expressly warranting some aspect of a new house which has nothing to do with the workmanship or the materials used.

*Id*. We also held that the attempted disclaimer was not "adequate to disclaim the [*Dixon*] implied warranty." *Id*. We opined that in order to have a valid disclaimer, "it must be in clear and unambiguous language." *Id*.

The *Dewberry* case was followed by our decision in *Axline v. Kutner*, 863 S.W.2d 421 (Tenn.App. 1993). In *Axline*, we again found to be inadequate a disclaimer identical to the one quoted above from *Dewberry*. *Id*. at 424-25. In *Axline*, we also found that a provision in the sales contract -- "1 year builders warranty included" -- was "meaningless" and not sufficient to avoid the implied warranty of good workmanship and materials "because there is no indication what the builder is warranting." *Id*. at 424.

6

In the instant case, we find and hold that the trial court was correct in refusing to instruct the jury regarding the implied warranty of good workmanship and materials. In this case, the Sellers, who were in the business of building houses, furnished the Buyers an express, detailed, expansive warranty that covered workmanship and materials for a period of one year. That warranty set forth reasonable procedures for invoking its provisions, including a provision requiring that all claims be made in writing.

The evidence is very clear that the Buyers understood that this transaction was subject to a one-year express warranty. They acknowledged in writing that they received a copy of that warranty and further acknowledged that it was the only warranty involved in the transaction. The warranty includes a disclaimer that, unlike the one in **Dewberry** and **Axline**, is "clear and unambiguous" as to the warranties disclaimed. *See **Dewberry***, 755 S.W.2d at 54. Both of the Buyers testified at trial that they read the Sellers' express warranty and hence knew that there was a one-year warranty covering their transaction.

The Buyers attempt to avoid the one-year express warranty by pointing out that the Contract itself is silent as to any warranties. They claim that the **Dixon** implied warranty should control this case because, quoting from **Dixon**, "[t]his warranty is implied only when the written contract is silent." **Dixon**, 632 S.W.2d at 542. Hence, so the argument goes, a contract silent as to warranties gives rise to the **Dixon** implied warranty.

7

We do not believe the quoted language from *Dixon* is an impediment to the effectiveness of the express warranty furnished to, read by, and acknowledged by the Buyers at the closing. While it is true that the Contract in the instant case is silent as to warranties, it is clear that the parties intended that this transaction would be subject to the one-year express warranty. The Buyers not only accepted the one-year express warranty at the closing, they also made claims under it and received benefits as a result of it. In the record before us are two letters from the Buyers to the Sellers -- one dated October 27, 1992, and the other dated September 28, 1993 -- listing items for repair under the one-year warranty. The second of the two letters was written two days before the one-year anniversary of the closing. It includes the statement that "[t]his is a list of items that need to be fixed or repaired *on our 1 year warranty*." (Emphasis added).

Mr. Bunch wrote the Sellers a third letter dated August 23, 1995, but the proof indicates that it was actually written August 23, 1994. While the letter is well beyond the one year period of the warranty, it is significant because it also refers to the "1 year warranty." Mrs. Bunch's testimony is particularly significant on this subject:

> Q. All right. You wrote these letters for
> your husband about the one-year warranty, did
> you not?
>
> A. Yes, sir.
>
> Q. And you all were relying on that
> warranty?
>
> A. Yes, sir.

8

Q.  And he's stated -- Did you write the letter in August of '94 that has the date of August of '95?

A.  I'm not sure if he wrote it or I wrote it.  I'm not sure which it was.

Q.  At any rate, it also refers to the one-year warranty, does it not?

A.  Yes, sir, it does.

Q.  You all reviewed that warranty when you got it?

A.  Yes, sir, we looked over it.

Q.  And you both signed the acknowledgment of the receipt of it?

A.  Yes, sir.

Q.  You both read it?

A.  Yes, sir.

Q.  Both read the acknowledgment form, the receipt of it?

A.  Yes, sir.

Q.  And you acted on and used that as part of your contract with Mr. and Mrs. Cooper?

A.  I'm not sure I understand the question.

Q.  The warranty.  In other words, you all, when you called them or wrote to them, you'd write to them about the warranty?

A.  Yes, sir.

Thus, the parties to the Contract clearly recognized the one-year express warranty as a part of their transaction. The "rule of practical construction" is applicable to the facts of this case:

...the interpretation placed upon a contract by the parties thereto, as shown by their acts, will be adopted by the court and that to this end not only the acts but the

9

> declarations of the parties may be
> considered.

*Hamblen County v. City of Morristown*, 656 S.W.2d 331, 335 (Tenn. 1983).

In the instant case, there is an express warranty of good workmanship and materials with a clear disclaimer of any implied warranties including "...IMPLIED WARRANTIES OF MERCHANTABILITY, HABITABILITY, AND FITNESS FOR A PARTICULAR PURPOSE." Under *Dixon*, these provisions are sufficient to render inapplicable the implied warranty described in that case. The trial court was correct in refusing to give the requested instruction. The parties to the Contract "contract[ed] in writing for a warranty upon different terms and conditions." *Dixon*, 632 S.W.2d at 542.

The judgment of the trial court is affirmed. Costs on appeal are taxed against the appellants and their surety. This case is remanded to the trial court for enforcement of the judgment and collection of costs assessed there, all pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Houston M. Goddard, P.J.


_____

10

Herschel P. Franks, J.