# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

June 19, 1998

Cecil W. Crowson
Appellate Court Clerk

ELMER R. KINNEY and wife, )
VESTA L. KINNEY, )
 )
  Plaintiff/Appellant, )
 ) Appeal No.
 ) 01-A-01-9709-CV-00465
VS. )
 ) Warren Circuit
 ) No. 6059
WAYMON H. HALE, )
 )
  Defendant/Appellee. )

APPEALED FROM THE CIRCUIT COURT OF WARREN COUNTY
AT MCMINNVILLE, TENNESSEE

THE HONORABLE CHARLES D. HASTON, JUDGE

CHARLES S. RAMSEY, JR.
114 North Spring Street
Manchester, Tennessee 37355
 Attorney for Plaintiff/Appellant

B. TIMOTHY PIRTLE
Third Floor, City Bank Building
McMinnville, Tennessee 37110
 Attorney for Defendant/Appellee

AFFIRMED AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
KOCH, J.

# O P I N I O N

In an action for breach of warranty, misrepresentation, and negligent design or construction of a house, the Circuit Court of Warren County granted summary judgment to the vendor. On appeal the purchaser argues that the trial judge mis-applied the law and overlooked facts in the record that make summary judgment improper. We affirm the trial court.

## I.

Waymon Hale, a licensed general contractor, built a house in Warren County for a family named Kuhr. The house was substantially completed in June of 1985, but Mr. Kuhr died before taking possession. In 1987, in the settlement of Mr. Kuhr's estate, the house was deeded to Lenore H. Heidemann, Mr. Kuhr's business partner.

Ms. Heidemann was also affiliated with Mr. Hale, and she deeded the house to the two of them jointly in December of 1987, at which time Mr. Hale and his wife moved into the property.

While the property was still vacant in 1987, the plaintiff Mrs. Kinney looked at it but decided to buy another residence in Coffee County. In 1990 Mrs. Kinney looked at the house again and on September 21, 1990 signed a contract to purchase it for $100,000. Her husband also signed the contract, although he was at that time in failing health. He died during the proceedings below. The contract contained a provision stating, "unless otherwise specified herein this property is purchased 'as is' and neither the seller nor agent makes or implies any warranties as

to the condition of the premises." The Kinneys took possession on or about October 17, 1990 under a warranty deed signed by Mr. Hale and Ms. Heidemann.

In December of 1990 and again in February of 1991, after a period of unusually heavy rainfall, Mrs. Kinney discovered water standing around and under the house. She also said that the roof leaked, especially around the chimney, and that chips began to fall from the brick siding. The Kinneys filed this action in June of 1991 against Mr. Hale and Ms. Heidemann.

Mrs. Kinney took a voluntary nonsuit as to Ms. Heidemann in June of 1996. Mr. Hale filed a motion to dismiss in 1993, and the parties filed various evidentiary material, including Mrs. Kinney's affidavit and deposition, an affidavit from Mrs. hale, and Mr. Hale's deposition. The trial judge treated the motion as one for summary judgment and granted the motion on October 30, 1996.

## II.

## Breach of Warranty

Mrs. Kinney relies on the limited warranty established in *Dixon v. Mountain City Construction Co.*, 632 S.W.2d 538 (Tenn. 1982). The Supreme Court, however, carefully limited the warranty recognized in that case to recently completed dwellings, and the reach of the warranty only to the initial vendees. 632 S.W.2d at 541. Perhaps more importantly, the warranty is implied only when the written contract is silent. *Id.* at 542.

None of the conditions under which the warranty would arise are present in this case. Mr. and Mrs. Kinney were not the initial vendees; the house was built in 1985, and the Hales had lived in it for two years when it was transferred to the Kinneys; and the contract contained the "as is" language.

Nor do we find in the record any basis on which we could find an express warranty. In her affidavit, Mrs. Kinney makes only two assertions of fact bearing on this question. She says that when she looked at the house in 1990 she asked Mrs. Hale if they (the Hales) had had any water standing around or under the house. Mrs. Hale stated that they had not had any water problems. She also said that in October of 1990, when Mr. Hale gave her a key to the house, he told her that the house was built for a man who had some kind of lung or breathing problems and that underneath the house and the brick had been treated to make it moisture-proof.

In her deposition Mrs. Kinney said that when she looked at the house in 1987, the agent told her that the house had been specially treated for dampness. She repeated the fact that Mrs. Hale told her in 1990 that they had not experienced any water problems and she related again how Mr. Hale told her when he gave her the key that the house had been specially treated for moisture.

Mrs. Hale filed her affidavit stating that prior to the sale to the Kinneys she was not aware of any water problems at the house. There is no proof in the record that prior to the sale, the Hales did have any knowledge about water problems under the house or of any problems with a leaking roof.

A warranty is a representation made "in such manner and circumstances as to authorize the buyer to understand that the seller intended to be bound by them as a part of the contract of sale and he must have purchased in reliance on them." *Wallace v. McCampbell*, 156 S.W.2d 442 at 444 (Tenn. 1941). Measured by this standard, Mrs. Hale's statement that they had not experienced any water around or under the house cannot amount to a warranty. Mr. Hale's alleged statement after the property had been deeded to the Kinneys could not have had any effect on the Kinney's decision to make the purchase. Therefore, the Kinneys could not base a claim on express warranty.

### III.

### Misrepresentations

We are satisfied that the same facts compel a conclusion that Mr. Hale did not make any actionable misrepresentations to Mrs. Kinney concerning the condition of the property. Reliance is a key element in an action for deceit -- whether at law or in equity. *See Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228 (Tenn. App. 1976). On the basis of this record, the Kinneys could not have relied on Mr. Hale's representation in making the decision to purchase the property.

As to Mrs. Hale's statement, there is nothing in the record from which an inference could be drawn that her statement was false. So far as the record shows her statement that they had never had any water problems at the house was true. The water problems showed up in February of 1991 after some record rainfall in that month and in December of the prior year. If in fact the water problems existed prior to the sale, there is no proof that Mrs. Hale knew about them. *See Gibbs v. Odell*, 42 Tenn. 132 (1865).

### IV.

### Faulty Design or Construction

Mr. Hale, as the builder, might have been liable for the harm caused by design or construction defects in the house. But the legislature has placed an outside limit of four years after substantial completion on the right to recover for any injuries, to persons or property, resulting from the design or construction. *See* Tenn. Code Ann. § 28-3-202. This house was substantially complete in 1985. Therefore, this action, filed in 1991, comes too late.

The judgment of the trial court is affirmed and the cause is remanded to the Circuit Court of Warren County for any further proceedings necessary. Tax the costs on appeal to the appellants.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

_____
WILLIAM C. KOCH, JR., JUDGE